UNION NATIONAL BANK, APPELLEE, v. A. MOOMAW, APPELLANT.

FILED JULY 7, 1921. No. 21412.

1. **Bills and Notes:** ACTION BY INDORSEE: ESTOPPEL. In a suit by the indorsee of promissory notes given to a corporation in payment for shares of its capital stock for which the maker of the notes subscribed in writing, when the stock has been issued and delivered by the corporation in accordance with the subscription contract, the maker of the notes is estopped to deny their ownership by the corporation.

2. **Corporations:** NOTES: ADMISSIBILITY IN EVIDENCE. Where promissory notes payable to the order of an insurance company are

indorsed in the name of the corporation by its treasurer and by him and its president and its secretary sold to a bank, which credits the proceeds thereof to the insurance company, it is not error for the court in a suit by the bank against the maker to admit the notes in evidence without proof that the by-laws of the insurance company authorized the treasurer to execute the indorsement.

3. Bills and Notes: BONA FIDE HOLDER: BURDEN OF PROOF: QUESTION FOR JURY. In an action by a bank, an indorsee of promissory notes, against the maker, where defendant pleads and the evidence tends to show fraud in the inception of the notes, the burden is on plaintiff to show that it is a *bona fide* holder, and, where from the evidence reasonable minds may reach different conclusions, the question is for the jury.

4. Witnesses: CROSS-EXAMINATION. Where in a suit by a bank, the indorsee of promissory notes, the burden is on plaintiff to show that it is a *bona fide* holder, much latitude is allowed in the cross-examination of its cashier, he being the officer who acted for plaintiff in the purchase of the notes and the witness by whom plaintiff seeks to prove the *bona fides* of the transaction, and it is error for the trial court so to restrict the examination as to prevent a full disclosure of the knowledge of the witness as to matters material to the inquiry.

APPEAL from the district court for Scotts Bluff county: RALPH W. HOBART, JUDGE. *Reversed.*

*Morrow & Morrow,* for appellant.

*Wright, Mothersead & York* and *C. L. Kagey,* contra.

Heard before MORRISSEY, C.J.; DAY, DEAN and LETTON JJ.

MORRISSEY, C.J.

Defendant appeals from a judgment entered in the district court for Scotts Bluff county.

Action was brought by plaintiff as the holder of two promissory notes in the sum of $1,000 each, given by defendant to the Globe Life Insurance Company of Salina, Kansas. One note bears date of November 9, 1917, and the other November 17, 1917. The issues as to each note are the same. After setting out a copy of each note the petition alleges: "That before maturity of the said note

and in due course of business plaintiff purchased said note from the said Globe Life Insurance Company for a valuable consideration, and said Globe Life Insurance Company duly indorsed and assigned said note, and this plaintiff became, and ever since has been and is now, the owner of said note and is entitled to the payment thereof."

The answer admitted the execution and delivery of the notes to the insurance company, but denied all other allegations in the petition. It specifically denied that the insurance company indorsed or assigned the notes to the plaintiff, but averred that one W. S. Hayslip, who was treasurer of the company, and who had made the indorsement, had no authority to indorse the name of the company on the note, and alleged that the indorsement was not the indorsement of the insurance company. It also alleged that the company received no consideration for the note. It alleges that by false and fraudulent representations defendant was induced to execute the notes for shares of capital stock in the insurance company, pleading at length a state of facts which would constitute a defense to the notes if they were in the hands of the original payee, and constituting a defense provided plaintiff did not become the owner and holder in due course. At the close of the evidence the court directed a verdict for plaintiff.

As grounds of error defendant alleges that the court erred in permitting the introduction of the notes in evidence. The basis of the assignment is found in the contention that, although the notes were made payable to the Globe Life Insurance Company, they were in fact the property of one Felix Broeker, president of the company, and that the company was not authorized by its charter to indorse commercial paper for the benefit of other parties; that the treasurer of the corporation had no authority to make the indorsement, and therefore the notes were inadmissible in evidence until plaintiff first proved that the treasurer was expressly authorized by the by-

laws or by resolution of the board of directors to make the indorsements. In support of the first contention, it is claimed that the capital stock of the insurance company, for which these notes were given, had first been sold by the company to Broeker, and he had employed a selling agency to make the sale to plaintiff and others, and that the stock actually issued was not the treasury stock of the corporation, but the stock of the individual, Broeker. The proof appears to show that Broeker had taken over a large block of stock under a contract with his own company and given his notes therefor, but the certificates of stock were still held by the company and on receipt of defendant's notes certificates of the proper denomination were issued to defendant. Defendant had signed a written subscription for stock of the insurance company; he had executed his notes payable to the order of that company; his subscription and his notes reached the company, and the company issued the stock. It is hard to perceive on what theory he may now be heard to say that these notes were not the property of the company. True, it is said in defendant's brief that there is no record in the office of the insurance company that it ever issued any stock to defendant or that it ever received the notes. On the other hand, the record before the court as a whole seems to confess the issuance of the stock, and the proof shows that the notes were in the hands of the company officers and by them delivered to plaintiff. The officers of the insurance company may have misappropriated the funds, but that would not necessarily affect the ownership of the notes. As to the sufficiency of the indorsement, even if conceded that the treasurer of the corporation was merely the servant of the board of directors, and that ordinarily he is the mere custodian of the property and funds and without power to execute commercial paper or bind the corporation by his indorsement, it will be noted that in the instant case, while the indorsement was signed by the treasurer, the transfer of the notes was made by him in conjunction with the president and secre-

tary of the corporation, and the proceeds of the notes were deposited to the credit of the corporation. To require one purchasing commercial paper from a corporation to investigate, in every instance, its charter, to ascertain the power conferred upon the officers with whom the business is transacted, might seriously disturb commercial business. It will not be disputed that if the corporation was the owner of the notes it might be proper for its officers to indorse and sell them in the ordinary course of its business, and, where the proof shows that the officers of the corporation who usually and ordinarily handle and negotiate its commercial paper write the name of the corporation on the back of the note, and, for a valid consideration moving from the purchaser to the corporation, deliver the note to the purchaser, the indorsement will be held sufficient. We therefore conclude that the court did not err in permitting the introduction of the notes in evidence.

We must now consider the question: Did plaintiff become a holder in good faith in the usual course of business, for value, and without notice of fraud in the inception of the notes? Under the pleadings and the proof made by defendant, the burden was upon plaintiff to prove the affirmative of this question. The alleged purchase of the notes was made through its cashier, Mr. Mergen, who testified to a state of facts which might be sufficient to support the instruction of the court to the jury to return a verdict for plaintiff. But, where doubt is cast upon the truth of the story and there is a dispute on any of the material issues, the trial court is not free to direct a verdict, but must submit the disputed questions of fact to the consideration of the jury.

Prior to the bringing of this suit the insurance company had become a bankrupt, and a great mass of documents, purporting to include the minutes of stockholders' and board of directors' meetings, as well as reports made by official examiners, is included in the record. From these reports and documents it appears that only a short

time before the notes in suit were executed Mr. Mergen was treasurer and director of the insurance company and associated with Mr. Broeker in the management of the company. By questions propounded to Mr. Mergen on cross-examination, when he had testified in rebuttal, defendant sought to show that at the time the insurance company was incorporated and for some time thereafter Mr. Broeker, its president, had no money, property or business of consequence; that shortly after the sale of stock in the insurance company in considerable amount Broeker acquired a chain of drug stores involving the expenditure of a large amount of capital; that he also acquired the controlling interest in the Felix Broeker Investment Company requiring capital of over $100,000; that he further acquired large interests in a real estate company and a bank; that during this time and until these notes were taken by plaintiff Broeker was using in his own business the funds of the life insurance company; and that the witness Mergen and the plaintiff bank knew of these speculations by Broeker prior to the purchase of the notes in suit. Objections were made to the questions propounded, as incompetent, irrelevant and immaterial, and the objections were sustained by the court. Defendant's offer to make the proof by the cross-examination of the witness was also excluded on like objection of plaintiff's counsel.

It is argued that, the witness being a representative of the plaintiff and an interested party, it was error to restrict his cross-examination or to deny defendant the benefit of the offered testimony, as it would tend to show the good faith of plaintiff in taking the notes and affect his credibility. Did the court err in so restricting the cross-examination? The burden was on plaintiff, after facts tending to show fraud were developed, to show that these notes were taken in good faith, and, if by the cross-examination of the witness it could be developed that he knew that the president of the company was violating his duties as an officer of the company and using its

funds for his private speculations, it might be material as
bearing upon his own good faith and honest intentions
at the time he claims to have purchased the notes as
cashier of plaintiff bank.   We cannot overlook the fact
that he had just recently retired from the board of direc-
tors and resigned as treasurer of the insurance company.
The record shows that the insurance company had not been
honestly managed.   It is difficult to believe that this wit-
ness was without knowledge of that fact, and if by reason
of his former official connection with the company, his
business dealings with its officers, and his knowledge of
their dishonest practices, he had reason to believe that
the notes had been fraudulently procured, and that the
officers of the company were dishonest men and were
selling the notes not for the benefit of the company, but
to carry out their own private speculations, this would
be a circumstance tending to show a lack of good faith
in the purchase of the notes.   In this connection it may
be well to also point out that, although the witness
Mergen testified that the bank paid a valuable considera-
tion for the notes in suit, crediting the insurance com-
pany with the proceeds, and that later the money was
withdrawn from plaintiff bank by the insurance com-
pany, an examiner for the insurance department of the
state of Kansas testified at length as to his examination
of the insurance company's books and said that they
failed to show that the credit given to the insurance com-
pany as testified to by the witness was ever credited to
the notes in suit on the books of the insurance company.
The mere failure of the officers of the insurance company
to make the entry on their books does not directly contra-
dict the claim of plaintiff that the transaction was in good
faith, but it is a circumstance which, in view of the rela-
tions shown to exist between plaintiff's cashier and the
men who were manipulating the affairs of the insurance
company, the jury might consider in weighing the testi-
mony of the witness and in a determination of the *bona
fides* of the transaction.

. That the representations made by the sales agents who procured the notes were false, fraudulent and calculated to deceive defendant needs no elucidation.  Defendant positively testifies that he relied on their representations and that they were the moving cause for the execution of the notes.  If this is denied, the question is for the jury.
. The judgment is reversed and the cause remanded.

REVERSED.