## ALFRED MOLINE V. STATE OF NEBRASKA.

### FILED SEPTEMBER 22, 1904.   No. 13,381.

1. **Constitutional Law.** Chapter 104 of the laws of 1899, amending section 125, chapter 58 of the criminal code of 1873, is valid, and not in conflict with section 11, article III of the constitution. The amendatory act is germane to the subject of the original section.

2. **Statutes: AMENDMENT.** The language of the section as amended fairly includes written instruments conveying the title to real estate to the one perpetrating the fraud, and thus securing the signature of a person or persons thereto.

3. **Information.** While the section as it now stands defines two offenses, to wit, obtaining money or property by means of fraud and false pretenses, and fraudulently disposing of property to defeat creditors, but one of these offenses is charged in the information, and it is not vulnerable to a motion to quash for duplicity.

4. ———: **DEMURRER.** The information examined, and *held* sufficient in form and substance to resist a demurrer.

5. **Instructions** given by the court on his own motion examined and approved.

6. **Evidence** examined, and found sufficient to sustain the conviction and sentence herein.

ERROR to the district court for Phelps county: ED L. ADAMS, JUDGE. *Affirmed.*

*W. P. Hall, J. L. McPheeley* and *H. M. Sinclair,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* contra.

BARNES, J.

An information was filed in the district court for Phelps county, against the plaintiff in error, by which it was attempted to charge him with a violation of the provisions of section 125 of the criminal code, by obtaining, through

fraud and false pretenses, the signatures of Frederick
Krapf and his wife, Christina, to a certain warranty deed,
an instrument in writing, conveying to him their farm
described as follows: The southeast quarter of section 24,
township 5 north of range 20 west of the 6th P. M., situated
in Phelps county, Nebraska. A trial resulted in a verdict
of guilty and a sentence thereon. The accused prosecuted
error, and the judgment was reversed on account of the
insufficiency of the information. *Moline v. State,* 67 Neb.
164. When the mandate was returned a new information
was filed charging the same offense, but in more explicit
terms, and which was sufficient in form and substance to
comply with the rules of criminal pleading. A second
trial resulted in another conviction, and the accused was
sentenced to serve a term of two years and four months in
the state penitentiary. He thereupon prosecuted error,
and the case is again before us for determination.

1. It is strenuously urged that section 125 of the
criminal code as it now appears in the Compiled Statutes,
is unconstitutional and void. The original section, as
found in the criminal code of 1873, reads as follows:

"If any person by false pretense or pretenses, shall ob-
tain from any other person, any money, goods, merchan-
dise, or effects, whatsoever, with intent to cheat and
defraud such person of the same, or shall fraudulently
make or transfer any bond, bill, deed of sale, gifts, grants,
or other conveyances, to defeat his creditors of their just
demands, such person so offending, shall be fined in any
sum not exceeding five hundred dollars, or be imprisoned
in the jail of the county, not exceeding ten days, or both, at
the discretion of the court."

Several ineffectual attempts were made to amend this
law, and finally the legislature, at its session in 1899
(Laws 1899, ch. 104), passed an act by which the section
was made to read as follows:

"If any person by false pretense or pretenses shall obtain
from any other person, corporation, association or partner-
ship, any money, goods, merchandise, credit or effects

whatsoever with intent to cheat or defraud such person, corporation, association or partnership of the same, or shall sell, lease or transfer any void or pretended patent right, or certificate of stock in a pretended corporation and take the promissory note or other valuable thing of such purchaser, or shall fraudulently make and transfer any bill, bond, deed of sale, benefit or grant or other conveyance to defraud his creditors of their just demands, or if he shall obtain the signature or indorsement of any person to any promissory note, bank draft, bill of exchange, or any other instrument in writing, fraudulently or by misrepresentation, if the value of the property, or promissory note, or written instrument or credit, fraudulently obtained or conveyed as aforesaid, shall be thirty-five (35) dollars, or upwards, such person so offending shall be imprisoned in the penitentiary not more than five (5) years nor less than one (1) year; but if the value of the property be less than thirty-five (35) dollars, the person so offending shall be fined in any sum not exceeding one hundred (100) dollars, or be imprisoned in the jail of the county not exceeding thirty (30) days and be liable to the party injured in the amount of damages sustained."

The information herein is founded on a violation of that part of the section inserted by the amendment, to wit:

"Or if he shall obtain the signature or indorsement of any person to any promissory note, bank draft, bill of exchange, or any other instrument in writing, fraudulently or by misrepresentation, if the value of the property, or promissory note, or written instrument or credit, fraudulently obtained or conveyed as aforesaid, shall be thirty-five (35) dollars or upwards, such person so offending shall be imprisoned in the penitentiary not more than five (5) years nor less than one (1) year."

And the contention is that this provision is void, because it is not embraced in the title of the amendatory act, and is not germane to the subject of the section amended.

It is conceded that the title of the act of 1873, establishing a criminal code, was broad enough to embrace section

125, as it now stands. This disposes of the question of the title, for it is a rule of general application that where the title to the original act is broad enough to embrace the amendment, the new matter inserted thereby, if germane to the act or section of the act amended, will be held valid. Cooley, Constitutional Limitations (5th ed.), *146, and note; *Brandon v. State,* 16 Ind. 197; *State v. Bowers,* 14 Ind. 195.

This brings us to the question as to whether the amendment is germane to the subject matter of the original section. It must be remembered that the subject of the section was fraud. By its enactment it was sought to prevent persons from obtaining money or property by means of fraud and false pretenses, and to prohibit persons from fraudulently disposing of, or conveying away their property for the purpose of defrauding their creditors. It has been amply demonstrated by experience, that the original section was not specific enough in its terms to embrace many of the transactions resorted to by dishonest and evilly disposed persons to fraudulently obtain the money, property and effects of their victims. And so, the legislature, to make the law more far-reaching and effective, adopted the amendment under consideration, which provides that to obtain, by means of fraud and false pretenses, the signature of a person to an instrument in writing by which property is conveyed to, or anything of value obtained by, the person perpetrating the fraud, is a violation of the act and punishable as therein provided. This provision is certainly germane to the subject of the original section; it is merely an amplification thereof. It is conceded that the whole matter as it now appears in the section as amended might have been included in the original section, and would have been embraced in the title to the act in which the section in question is found. It seems clear that the matter contained in the amendment is simply a description of fraudulent acts or transactions not embraced in the original section, and of the same nature, and is germane to the subject thereof. In

the case of *Perry v. Gross*, 25 Neb. 826, the title to the amendatory act in question was: "An act to amend section 214 of the criminal code, chapter 58 of the General Statutes of 1873." (Laws 1875, p. 2.)

The object of the original section was to prevent gambling. The title was held sufficient to authorize an amendment to the section giving the right to recover money or property lost in gambling, and that the amendment was germane to the subject of the original section. See also *Henry v. Ward*, 49 Neb. 392; *Larned v. Tiernan*, 110 Ill. 173; *Fidelity Insurance, Trust & Safe Deposit Co. v. Shenandoah Valley R. Co.*, 86 Va. 1, 19 Am. St. Rep. 858, 872, and note; *Bobel v. People*, 173 Ill. 19, 64 Am. St. Rep. 96, and note. We therefore hold that section 125 of the criminal code, as amended, is valid, and is not in conflict with the provisions of section 11, article III of the constitution.

2. It was contended orally, at the hearing, that the language of the section is not comprehensive enough to include a deed like the one in question, and the maxim *Expressio unius est exclusio alterius* was invoked to sustain this contention. It seems clear that this rule should not be applied to the act in question. By enumerating certain instruments in writing, none of which conveys property, and then concluding with the words:

"Or any other instrument in writing, fraudulently or by misrepresentation, if the value of the property, or promissory note, or written instrument or credit, fraudulently obtained *or conveyed* as aforesaid, shall be thirty-five (35) dollars or upwards."

The legislature must have intended to include deeds conveying real estate, and so understood the matter at the time the amendment was adopted. We therefore conclude that such deeds are fairly embraced by the language of section 125 in question.

3. It is further claimed that the trial court erred in overruling the defendant's motion to quash the information, because it charged two distinct and separate offenses,

viz., obtaining property by false pretenses, and obtaining signatures to a written instrument. It seems clear to us that the information charges but one offense. It is charged, in the information, that the defendant, by means of fraud and false pretenses, obtained the signatures of Frederick Krapf and wife to a certain warranty deed by which the title to their farm was conveyed to him, and that the value of the deed thus obtained and of the land conveyed was $2,500. So we conclude that the information charges but one offense.

Under this head, it was further contended that the accused was charged with the independent and distinct offense of selling and conveying land without a title; or in other words a violation of section 127 of the criminal code. It is a sufficient answer to this contention to say that he was charged with a violation of the provisions of section 125, and was tried for that offense, and no other. It further appears, from the evidence, that he did not convey the Indiana land to the prosecuting witness, for the deed therefor was executed by one C. N. Miller, and not by the accused. It thus appears that a prosecution under section 127 would have failed for want of evidence to sustain it.

4. It is insisted that the trial court erred in overruling the defendant's demurrer to the information, for the reason that it was charged that the value of the deed in question was $2,500, when in fact and in truth it was worth nothing, and the accused therefore obtained nothing by his fraudulent acts. We do not so view the question. The words of the statute (sec. 125, criminal code) are: "If the value of the property, or promissory note, or written instrument or credit, fraudulently obtained or conveyed as aforesaid," and it is evident that the legislature intended the word "value" to mean the amount of the liability expressed, assumed or incurred by means of the written instrument to which the signature was fraudulently obtained. It is true that at the common law a promissory note had no intrinsic value, and the same may be said of a deed or other instrument in writing. 1 Mc-

Clain, Criminal Law, sec. 543. · But promissory notes and like instruments in writing are made the subjects of larceny by statute in this and many other states. And by the section in question, they are also made the subject of the crime of obtaining property by false pretenses. Therefore, the value of an instrument in writing, within the meaning of the statute, must be taken to be the amount of the liability expressed therein, or assumed thereby. The execution of a warranty deed necessarily includes covenants of title, and the liability of the grantor incurred thereunder may equal the consideration paid therefor, or incurred thereby, which also may be the full value of the land conveyed. *State v. Butler,* 47 Minn. 483, 50 N. W. 532. And this rule seems to be recognized in *Turner v. State,* 1 Ohio St. 421. For these reasons we hold that the demurrer was properly overruled.

Some stress is placed on the fact that the land was reconveyed to Krapf after the information was filed and the accused placed on his trial. It is clear, however, that a reconveyance of the land constituted no bar to the prosecution.

5. Complaint is made of some of the instructions given to the jury by the court on his own motion. We have carefully examined these instructions, and find that they fairly state the law applicable to the facts in question herein. It seems clear from the record that the accused, by means of fraud and false pretenses, obtained the signatures of Frederick Krapf and his wife to the deed in question, as alleged in the information; that it is such an instrument in writing as is embraced by the letter and the spirit of section 125 of the criminal code; that it conveyed the land described therein to the accused; that the value of the deed in question within the meaning of the statute was more than $35, to wit, $2,500; and that the evidence is sufficient to sustain the conviction and sentence herein.

We find no reversible error in the record, and the judgment of the district court is therefore

AFFIRMED.