STATE OF IOWA, Appellee, v. JAMES LA VERE, Appellant.

**FALSE PRETENSES:** Evidence—Sufficiency. Evidence held ample
1　to sustain a verdict of guilty of fraudulently obtaining the signature of a person to a promissory note.

**FALSE PRETENSES:** Elements of Offense—Fraudulent Obtaining of
2　**Signature.** Under an indictment charging the obtaining of the signature of a person to a promissory note, designedly, by false pretenses, and with intent to defraud, it need not be shown that the person whose signature was obtained was *actually defrauded.*

**FALSE PRETENSES:** Elements of Offense—Fraudulently Obtaining
3　**Signature.** Under an indictment charging that the accused designedly, by false pretenses, and with intent to defraud, obtained the signature of a person to a promissory note, the State need not

necessarily show that the note was delivered *to the accused*, or that the accused received anything of value *immediately* from the person who did receive the note.

**FALSE PRETENSES:** Elements of Offense—Scienter. *Scienter*, in so 4 far as it is an element of the crime, is sufficiently charged in an indictment which alleges that the accused "knowingly, designedly, feloniously, by false pretense, and with intent to defraud," did obtain the signature of a person to a promissory note.

**CRIMINAL LAW:** Evidence—Other Offenses. Under an indictment 5 charging false pretenses, evidence of other false pretenses of the same general nature as the ones charged, and at substantially the same time, is admissible when the false pretenses are properly traced to the accused as the author thereof.

*Appeal from Fayette District Court.*—H. E. TAYLOR, Judge.

DECEMBER 15, 1922.

THE defendant and one Lester J. Reysa were indicted upon the charge of designedly and by false pretense obtaining the signature of G. O. Smith to a promissory note. The defendant, La Vere, having elected to be tried separately, was found guilty, as charged, and from the judgment entered upon the verdict he appeals.—*Affirmed.*

*A. E. McGlashan* and *R. S. Milner,* for appellant.

*Ben J. Gibson,* Attorney-general, and *John Fletcher,* Assistant Attorney-general, for appellee.

WEAVER, J.—The appellant assigns no less than 60 separate alleged errors of the trial court, some of which are subdivided into many distinct propositions. While it is manifestly impracticable for us to follow counsel in detail upon all the points thus raised, we think that a disposition of the main or principal question discussed in the briefs—the sufficiency of the evidence to sustain the verdict of the jury—will govern our ruling upon most of the contentions pressed upon our attention in argument.

I. In June, 1921, the prosecuting witness, G. O. Smith, signed and delivered to one Slifka his promissory note for

$2,838. On the charge that the defendant James La Vere, alias
J. A. Ward, and his codefendant Lester J.
Reysa, alias Ray Leslie, with intent to defraud
said Smith designedly and by false pretense
obtained the signature of said Smith to said written instrument,
they were jointly indicted for said alleged offense; and the ap-
pellant, being separately tried, was found and adjudged guilty.
The theory of the State's case is that, some time prior to the
making of said note, the man Reysa, being or pretending to be
acting as a salesman of the corporate stock of the Atlas Wheel
Company, an alleged corporation of the state of Ohio, solicited
Smith, a farmer, to subscribe for such stock, and that defendant,
La Vere, acting in collusion with Reysa, assisted the latter in
obtaining such subscription by representing to said Smith that
he himself had purchased a large amount of said stock, and
that it was good and valuable property. Upon such representa-
tion, it is further claimed, and induced thereby, Smith made
and delivered to Reysa his promissory notes to the amount of
$30,000. It appears that Smith was induced to believe, and as a
witness seems to still understand, that he was subscribing for
shares of stock in said company; but no shares or certificate
therefor were then or have ever been delivered to him. On the
contrary, when that transaction was consummated, Reysa pro-
cured from Smith the notes of the latter to the amount of
$30,000, together with a written memorandum, reading as
follows:

"Oelwein, Iowa, May 26, 1921. I hereby authorize *the
bearer* to purchase for my account 300 shares of the Atlas Wheel
Company of Cleveland, Ohio, paying therefor the sum of thirty
thousand dollars.

"[Signed] G. O. Smith."

Having obtained the $30,000 in notes, Reysa, with the active
assistance and co-operation of the appellant, set about convert-
ing them, in whole or in part, into money; but finding diffi-
culty in doing this, except in part, they both went to Smith,
the appellant still posing as a purchaser or holder of stock in
said company, and professing his purpose to take an additional
$20,000 worth of it, and proposed to him the following method

1. FALSE PRE-
TENSES: evi-
dence: suf-
ficiency.

of raising money to be used by Smith in payment for shares of the wheel company's stock. They informed him that a certain automobile dealer in Waterloo would take a new Willys-Knight car and pay therefor $2,500 in cash, and that, if he (Smith) would purchase a car of that kind from Slifka,—a dealer at Waucoma,—giving a promissory note for it, they would take the car to Waterloo and collect the price for his use. To this Smith agreed, and both defendants then took him to Waucoma, where the deal with Slifka was made, and Smith executed and delivered the note mentioned in the indictment, for $2,838. Smith at once turned the car over to the defendants, to complete their part of the program by delivering it to the alleged dealer in Waterloo and obtaining the money therefor. To witness their authority to sell the car, Smith, at their request, made an informal bill of sale to the appellant. As a witness, appellant admits taking the bill, but says it was at a later date, when they had reported to Smith their inability to make the sale in Waterloo, and that it was then agreed that appellant should take the car and find a purchaser for it. This story in this respect, if correct, is not very material; for it is conceded, or shown without dispute, that, within a very few days, appellant sold or exchanged the car for another, and he makes no pretense that he ever accounted therefor to Smith. It is also made to appear that the representation that defendants or either of them had a customer or buyer in Waterloo who would take the car or pay therefor was false, and must have been known by them to be false, and that the transaction was a cunning device by which defendants got possession of a new car at Smith's expense and converted it to their own use. Appellant was the only witness offered in support of the defense, and it is true that he denies much of the evidence offered by the State; but his veracity and the weight and value of his testimony were for the jury. There is much in his admissions and in the story of his conduct, as related by the witnesses for the State, to cast suspicion and doubt upon the case he seeks to make. It is his claim that his part in the transaction was that of a mere friend of Reysa's, who invited him to help in getting Smith's notes cashed and offered him a 10 per cent commission for doing so, and that Reysa was the principal and only responsible party in bringing

about the deal of which Smith complains. But if Smith's story be true,—and its truth was for the jury alone,—appellant allowed himself to be introduced to Smith by Reysa as the freight agent of the Illinois Central Railway Company at Independence; he contributed the weight of his pretense to be a holder of such stock in victimizing Smith; he was in close co-operation with Reysa in trying to cash Smith's notes, and did, in fact, as we understand the record, negotiate a part of them, obtaining Liberty Bonds therefor; he assisted Reysa in bringing about the deal with Slifka in which the note here in controversy was given; it was his promise to take the car to the pretended buyer in Waterloo and collect the money for Smith's benefit; it was he who got the bill of sale from Smith and converted the car to his own use. That the jury should find him guilty on such showing is not at all strange, and certainly the verdict cannot be said to be lacking in support in the evidence.

II. It was drawn out in the cross-examination of Smith that, after he made the note to Slifka for $2,838, Reysa returned to him $2,500 of the notes given in the original transaction, and later "gave him credit for an additional $100." It is argued that because of this showing Smith was not in fact defrauded, and that, therefore, no conviction could rightfully be had upon the indictment in this case. Reference to the statute, Code Section 5041, will show clearly the essential elements constituting the crime charged. It is there provided that:

2. FALSE PRETENSES: elements of offense: fraudulent obtaining of signature.

"If any person designedly and by false pretense, * * * with intent to defraud, obtain * * * the signature of any person to any written instrument the false making of which would be punished as forgery, he shall be imprisoned," etc.

As will be seen, the material allegations of the charge are: (1) The design; (2) the false pretense; (3) the intent to defraud; (4) the obtaining of the signature; and (5) the character of the written instrument as one the false making of which would be punishable as forgery. If each and all of these things are established by the necessary quantum of proof, the crime is made out, and the State is entitled to a verdict of guilty. If any one of these elements is not so established, the accused is entitled to an acquittal. In the case before us, it is to be said

as a matter of law that a promissory note is an instrument the false making of which is a forgery. The design or conscious purpose and the intent to defraud are ordinarily to be found, not alone from the testimony of the accused, but as well from the nature of the act itself and the circumstances attending it; and the falsity of the alleged pretense or representation may be established by proof of any fact having a fair and natural tendency to prove that the alleged statements and representations were not true, and that accused knew it. These things being established, the proof of the crime is complete, and the State is not required to go further and show that the person whose signature was thus fraudulently obtained suffered actual loss or damage thereby. *State v. Jamison*, 74 Iowa 613. If, for illustration, a person by fraud and false pretense obtains the signature of another to a promissory note which is delivered, and becomes, apparently at least, the legal obligation of the one so imposed upon, and soon thereafter the culprit is arrested, with the instrument still in his possession, the crime is surely none the less complete because he has not yet received any benefit from his wrongful act, or because the party whom he entrapped into signing and delivering the note has suffered no actual loss or injury therefrom. See *People v. Genung*, 11 Wend. (N. Y.) 18; *Commonwealth v. Wilgus*, 4 Pick. (Mass.) 177; *Tarbox v. State*, 38 O. St. 581; *State v. Pryor*, 30 Ind. 350; *In re Rudebeck*, 95 Wash. 433 (163 Pac. 930).

III. Nor do we think it a fatal objection to the State's case that the note, the signature to which is alleged to have been fraudulently obtained by Reysa and appellant, was made and delivered to Slifka, and not to them. The essence of the wrong, if any, was in fraudulently procuring or inducing Smith to sign and deliver the note, whether to themselves or to another, if their act in that respect was part of a corrupt scheme to accomplish the fraud. It seems also to be the position of counsel that, as Smith received the automobile for which the note was given, and there was apparently no fraud on the part of Slifka, it cannot be successfully claimed that any fraud or false pretense on the part of Reysa and appellant induced the making or delivery of the note. But the record presents a case not quite

3. FALSE PRETENSES: elements of offense: fraudulently obtaining signature.

so simple as suggested. The evidence tended to show that the scheme alleged to have been worked by Reysa and appellant was carefully planned by them in advance. They ascertained that Slifka had a car which he would sell, and he told them to bring Smith to him, and that, if he appeared to be financially responsible, he (Slifka) would accept his note for the purchase price. With this information, they then went to Smith, and falsely represented to him that a certain dealer in Waterloo had assured them he would take the car and pay cash for it, and they proposed to Smith to buy the car, giving his note for it, and that they would take it to the dealer in Waterloo and collect the price in money for his benefit, thus enabling him to pay for stock in the Atlas Wheel Company. Believing and relying upon the truth and good faith of the representations and assurances made by Reysa and appellant, Smith executed the note mentioned in the indictment, and, receiving the car, turned it over to them at once, to be converted by them into money for his use. This they did not do, and, we may safely assume, never intended to do; and by this triumph in high finance, they obtained possession of a valuable car, which they converted to their own use, while their victim is apparently left without any defense which he can make available against his note to Slifka. Under such circumstances, we think it must be true that although, as between Smith and Slifka, the note was the voluntary act of the former, and constitutes a valid obligation, and although he received from Slifka the consideration therefor, yet, if the jury finds that he would not have entered into the deal and would not have executed the note but for the false pretenses and fraudulent conduct of Reysa and appellant, the showing is ample to sustain a conviction. The case presented is not materially unlike the one found in *Tarbox v. State,* supra. There it was charged that defendant, with the assistance and collusion of others, induced one Scott to buy certain alleged race horses, making false and fraudulent statements concerning their speed, pedigree, breeding, and performance, and thereby obtained from Scott a bank check signed by him; and it was held that proof of the falsity of the representations knowingly and fraudulently made concerning the horses, thereby obtaining the making and delivery of the check, was sufficient to sustain a conviction. To

hold otherwise in this class of cases would, in practice, operate as a judicial license for unconscionable fraud.

IV. Assuming that the jury found, as we think it rightfully could, that the execution and delivery of the note were procured by false pretense and fraud, as indicated in the statute, the fact, if it be a fact, that, after the offense was consummated, the appellant or Reysa, either or both, returned to Smith an equivalent amount of the notes which Smith had made in the original deal, authorizing Reysa to purchase stock to the amount of $30,000, would not negative the commission of the alleged offense or purge it of its unlawful character; for, if the crime was committed at all, it was consummated when the signing and delivering of the note were procured. What followed thereafter is important only as evidence bearing upon the allegations of fraud by which that wrong was accomplished. The case of *State v. Foxton*, 166 Iowa 181, cited and relied upon for the appellant, does not seem to be in point. The charge there was not the obtaining of the signature to a writing by false pretenses, but the obtaining of a sum of money by such fraud. The chief question there discussed was whether the mere fact of making and delivering a check upon a bank, without having any deposit to draw upon, and without reason to believe that the bank would honor it, was in itself a false representation, within the meaning of the law; and this query was answered in the affirmative.

V. It is argued that the indictment is insufficient. The point is made that the indictment, to be sufficient, must allege *scienter* on the part of the accused, and that the charge made in this case is defective in that respect. But the indictment does expressly allege that defendant did "designedly and by false pretense and with intent to defraud Smith," etc.; and it again alleges that the representations and pretenses charged to be false were made "knowingly, designedly, and feloniously;" and we think that the charge so made is not vulnerable to the objection raised. The charge as made is stated in substantially the terms of the statute, which in all ordinary cases is held to be sufficiently specific to put the accused upon his defense. To adopt the appellant's argument, and say that the allegation that a false and

4. FALSE PRE-
TENSES: elements
of offense:
*scienter.*

fraudulent representation or pretense was designedly and knowingly made, with intent to defraud, does not necessarily mean that defendant knew his statements to be false, and may mean nothing more than that he innocently and without design stated that which was false, while believing its truth, is an excessive and unnatural refinement upon terms the meaning of which is familiar to every layman, as well as to the lawyer. The objection to the indictment on the ground so stated must be overruled.

VI.  It is also assigned as error that the court permitted evidence of the deal by which Smith's notes were obtained to the amount of $30,000.  It is the theory of the defense that this

5. CRIMINAL LAW:
   evidence: other
   offenses.

defendant was in no manner implicated in that transaction, and that, if any wrong was committed therein or in the matters subsequently arising in that regard, it was the act of Reysa alone, and that such evidence on the trial of this case was unduly prejudicial to the appellant.  This would be the case if the jury was bound to accept the appellant's denial as true.  But unfortunately for him, the State's evidence tends to show that, while Reysa posed as the agent for the alleged Wheel Company, appellant was his collaborator from the start of the deal with Smith; that each successive phase in the criminal scheme had its root and origin in that transaction; and that, from the first, appellant was an active, if not the leading, operator in the effort to realize the cash on the paper so obtained, and in the elaborate plan worked out to induce Smith to make the note in question and to absorb his full share of the profits of the gross fraud.  His denial of complicity in the offense creates an issue of fact for the jury, and that tribunal has found against him.

Of the other specific assignments of error not covered by our conclusions above announced, it is to be said that they are not argued in the briefs of counsel, and are thereby waived. We may add, however, that we have examined all said assignments, and find nothing therein to indicate reversible error.

The judgment appealed from is, therefore,—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.