## LEN J. DAVIS, v. STATE OF NEBRASKA.

' FILED JULY 19, 1929. No. 26815.

*George F. Corcoran* and *Waring & Waring,* for plaintiff in error.

*C. A. Sorensen, Attorney General, Clifford L. Rein* and *Guy A. Hamilton, contra.*

Heard (before GOSS, C. J., DEAN, GOOD, EBERLY, and DAY, JJ., and CHASE and REDICK, District Judges.

CHASE, District Judge.

In this case Len J. Davis was convicted of the crime of embezzlement. He prosecutes error to this court for reversal of the conviction. For all purposes herein Len J. Davis will be referred to as the defendant.

The defendant relies upon twelve separate assignments of error for a reversal of the conviction. After careful examination of the record, we are convinced that his conviction cannot be affirmed, therefore, we will not discuss all the assignments of error upon which a reversal is sought.

There does not seem to be any serious dispute upon the facts. Len J. Davis for a number of years previous to the trial had been vice-president of the Citizens State Bank of Geneva, Nebraska, and was such on the 8th day of July,

1927, being the date on which he is charged with the commission of the crime. A short time prior to July 8, 1927, Roy and Joe Davis, brothers of defendant, appear to have been indebted to the Citizens State Bank of Geneva in the amount of approximately $7,900. The bank, about this time, was in serious financial difficulties. The defendant had a meeting with the directors of the bank in which the Davis brothers' loan was discussed. At this meeting the directors, along with the defendant, decided that it was necessary for the preservation of the bank to take this paper out of the bank. The defendant, on and previous to this time, was also trustee of the estate of one John Archer, deceased. This estate had among its assets a note signed by one Koehler in the sum of $7,500 secured by a first mortgage on real estate. At this directors' meeting the defendant offered, and the directors consented, to assign the Koehler note, belonging to the Archer estate, to the bank as an asset, and the bank to assign the Davis brothers' notes to the Archer estate. This was done for the purpose of building up the reserve of the bank. Whereupon the defendant made the assignment in accordance with this arrangement. The Koehler note was then sold by the bank, and for aught this record discloses the proceeds of the sale went into the assets of the bank. It is not clear just how much money was realized from the sale of the Koehler note. It also appears from the offer made by the defendant that it was agreed between him and the directors that at any later time, or when the bank reestablished its financial equilibrium, the defendant would have authority to take the Davis brothers' notes from the Archer estate and put into the Archer estate notes or money equivalent in value to the Koehler note which had been sold to the bank. The bank continued to grow financially weaker, and when it was evident that it would have to close its doors the defendant, claiming to have done so under the previous arrangement with the board of directors, assigned 41 notes, assets of the bank, to the Archer estate in lieu of the Koehler note. At this

time he put back into the bank the indebtedness of Davis brothers which was being carried as an asset of the Archer estate. The Davis brothers' paper is admitted to have been practically valueless at the time it was transferred to the Archer estate, and was still valueless at the time it was taken back into the bank when the 41 notes were assigned to the Archer estate. The assignment of these 41 notes to the Archer estate is the act of embezzlement upon which the state relies to support its conviction.

The information in which the defendant was charged with the crime of embezzlement at first contained two counts, but upon motion duly made by defendant, and sustained by the court, the state was required to elect upon which count it should stand, and it therefore elected to stand upon the first count of the information. The information, so far as material to our consideration, after alleging the relationship of the defendant to the Citizens State Bank of Geneva, is in the following words:

"That on or about the said 8th day of July, 1927, the said Len J. Davis, in said county and state aforesaid, did fraudulently, unlawfully and feloniously abstract, convert to his own use, and embezzle certain moneys, funds and credits, the property of said bank, in the sum of $8,101.46, said property being in his possession as such vice-president of said bank, without authority of the directors of said bank, and with the intent on the part of the said Len J. Davis to injure and defraud said Citizens State Bank of Geneva, Nebraska."

One of the chief assignments of error upon which the defendant relies for reversal of the conviction is that in substance the information charges the defendant with the embezzlement of the sum of $8,101.46 in money; that the state made no effort to establish this charge, but undertook to prove, and did prove to the satisfaction of the jury, that the defendant did not embezzle any money, but abstracted from the bank 41 separate promissory notes and converted the same to his own use. The defendant contends that the state;

if it relied upon such evidence for a conviction, under the law, would be required to charge in the information that the defendant abstracted certain promissory notes from the bank and set forth said notes in detail in order that the defendant may have notice of the charge which he is required to meet.

This court construed section 9638, Comp. St. 1922, in *Winkelmann v. State*, 114 Neb. 1, in which it held that, where it was charged that a person did wilfully and feloniously embezzle, abstract and misapply the sum of $1,000, being money, funds and credits, the charge referred to a single transaction. "Where, under section 9638, Comp. St. 1922, a bank cashier is charged in one count of an information with embezzling, abstracting and misapplying $1,000 of the bank's funds, and all the acts charged relate to a single transaction, only one offense is charged." *Winkelmann v. State*, 114 Neb. 1. The question of any variance between the charge and the proof was not present in that case. Here the precise question is not whether the information charges a single crime, but whether the state must specifically set forth the exact facts upon which it relies for a conviction in order that the defendant may be apprised of what evidence he will be required to secure as a defense to the charge. This question was not involved in the case of *Winkelmann v. State, supra*.

This court has recently held in *Stowe v. State*, 117 Neb. 440, that accused is entitled to know what facts the state relies on to support a conviction, citing section 11, art. I, of the Constitution: "In all criminal prosecutions the accused shall have the right to appear in person or by counsel, to demand the nature and cause of the accusation, and to have a copy thereof." The information should show "the property alleged to have been embezzled with such certainty as to identify it." Wharton, Criminal Procedure (10th ed.) p. 751. It is fundamental under our criminal procedure that the defendant has a right to have the indictment so framed that acquittal thereunder could be pleaded in bar of a subsequent prosecution for

the same act. Unless the charge in the information is set forth with sufficient particularity that it can be properly identified in a subsequent proceeding, it could not operate to support the plea of *autrefois acquit*.

In this case from any reasonable interpretation of the charges in the information the same go no further than to charge the defendant with having abstracted, converted and embezzled certain moneys in the sum of $8,101.46. The words "funds and credits" refer doubtless to something different from moneys. Moneys would be funds and credits, but the converse would not be true, that funds and credits are necessarily moneys. Credits include choses in action or any other obligation due or to become due under which the relationship of debtor and creditor might arise. The word "fund" is defined by Webster to be "stock or capital; a sum of money appropriated as a foundation for commercial or other operations undertaken with a view to profit and by means of which expenses and credits are supported." "Funds include moneys, and much more such as notes, bills, checks, drafts, stocks, and bonds." *United States v. Greve,* 65 Fed. 488.

Therefore, if the state intended to rely for a conviction in this case upon an abstraction or conversion of funds or credits, then it should have described with sufficient particularity the funds or credits so embezzled in order that the defendant might know upon which particular act of his the state relies for conviction. This was not done. We think the record on this point clearly shows an invasion of the defendant's constitutional rights in not giving him proper and legal notice of the state's demands or the nature and cause of the accusation.

In an indictment which described the property converted to be "goods, wares, and merchandise, personal property of value," it was held in *Clary v. Commonwealth,* 163 Ky. 48, that the indictment was fatally defective for want of proper description. The only exception there seems to be to this rule is where money is alleged to have

been embezzled. It is then sufficient to charge the embezzlement of a certain sum of money, setting forth the amount in dollars and cents. In every other case, so far as we are able to ascertain, the courts hold almost uniformly that, where personal property, funds or credits are charged to have been embezzled, it is necessary to set forth the exact property embezzled with sufficient precision to inform the defendant of the facts upon which the state relies to support his conviction.

As to a prosecution for larceny, it was held in *Korab v. State,* 93 Neb. 66:

"In an indictment or information for larceny the property alleged to have been stolen should be described with sufficient particularity to enable the court to determine that such property is the subject of larceny; to advise the accused with reasonable certainty of the property meant, and enable him to make the needful preparations to meet such charge at the trial."

The same rule was announced in *Barnes v. State,* 40 Neb. 545. This rule seems to be the one without many exceptions in all state and federal jurisdictions. It follows from this reasoning that there is a fatal variance between the charge in the information and the proof offered at the trial which was highly prejudicial to the rights of the defendant.

The other assignment of error which will be discussed herein is the action of the trial court in refusing to allow the defendant to show, over the objection of the state, that his acts, concerning the assignment of the 41 notes alleged to have been embezzled, were with the approval of the board of directors of the Citizens State Bank of Geneva. Every crime known to the law contains two essential elements, namely, an unlawful act, coupled with criminal intent. The criminal intent is as much a part of the act constituting the crime as is the unlawful act. We might state at the outset that it appears that, if the conduct of the defendant with reference to the assignment and abstraction of the paper alleged to have been

embezzled was with the approval of his board of directors, it goes directly to his intent to commit the offense of embezzlement, and it was reversible error to refuse the defendant the right to submit to the jury facts indicating the absence of any criminal intent. The undisputed facts, as disclosed by this record, are that the defendant wrongfully took out of the Archer estate the Koehler note secured by a first mortgage, which was a liquid asset. That note was turned over to the bank with the approval of the bank's directors for the purpose of raising money in an effort to keep up the bank's reserve at a time when it was suffering from financial debility. Under such circumstances the bank could not acquire good title to this paper, but it accepted the same, used it for its own profit, and the defendant offered to prove, which offer was rejected by the trial court, that the board of directors knew and understood what was to be done and approved it and agreed with the defendant that he might at a later date take back into the Archer estate any funds of the bank to prevent the Archer estate from suffering any loss through this transaction. If this were true, it was an act of the corporation itself. Corporations are inanimate things or artificial persons created by law which neither have animation nor intellectuality. They necessarily perform their functions through the medium of natural persons elected for that purpose, and when the board of directors, the managing officers of the bank, consented to the act herein in which the defendant is charged with embezzlement, while the act of the directors may not have been entirely lawful, yet, in connection with a criminal prosecution in which the liberty of the defendant is in jeopardy, it may be sufficient to relieve him of any criminal or wrongful intent in making the assignment of the alleged 41 notes. We find no competent evidence in the record that establishes the real value of the 41 notes assigned. It is quite clear from the record that the bank was unjustly enriched at the expense of the Archer estate in the sum of $7,500. While it is not clear just what

the bank received from the discount of this note, the record being silent we may be justified in presuming that it received value. The witness Stanard attempted to fix the value of the 41 notes remaining uncollected, alleged to have been embezzled, but upon cross-examination he admitted that in the main he knew nothing of the financial worth of the makers thereof, and the evidence was wholly incompetent to satisfy the rule as to proof of value. Therefore, for aught the record discloses, the Citizens State Bank of Geneva may have profited by this transaction rather than suffered any loss, and if no loss was entailed there could not have been any intention on the part of the defendant to injure or defraud the bank, which is a necessary element of the crime of embezzlement.

The action of the trial court in refusing to permit the defendant to show that in taking the 41 notes out of the assets of the bank and placing them to the credit of the Archer estate, if in accordance with a previous arrangement which he had with his board of directors, and agreeable to them, had the effect of depriving the defendant of the right to have this fact submitted to the jury as affecting his intent to commit the crime of embezzlement; being highly prejudicial to his rights, the ruling of the district court constitutes reversible error.

For reasons heretofore stated, we therefore reach the conclusion that the judgment of the district court should be and is

REVERSED.

Note—See Indictments and Informations, 31 C. J. 661 n. 95; 731 n. 82; 9 R. C. L. 1287; R. C. L. Perm. Supp. 2631.