ROY PETTIJOHN, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

27 N. W. 2d 380

Filed May 2, 1947. No. 32207.

*Ted R. Frogge* and *Morrison & Hanson* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Erwin A. Jones,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Plaintiff in error, Roy Pettijohn, was convicted in the district court for Hitchcock County of the crime of obtaining money by false pretenses. He was sentenced to be imprisoned in the penitentiary for a period of one year. He appeals from that conviction.

The information charges: That Roy Pettijohn did, on the 23rd day of July 1945, knowingly and falsely represent to Henry P. Reese, intending thereby to unlawfully and fraudulently cheat and defraud him, that he, Roy Pettijohn, had secured a purchaser in the person of Albert Meints for the real estate of Henry P. Reese, pursuant to a contract entered into between Reese and Pettijohn; that Reese then informed Pettijohn that he did not desire to sell the land; that thereupon Pettijohn informed Reese that the purchaser was ready, able, and willing to perform and that if he, Reese, refused to sell that he, Pettijohn, would be entitled to the sum of $500 by virtue of the contract; that Reese, relying upon these representations, executed and delivered to Pettijohn his note and chattel mortgage in the sum of $500; that on August 30, 1945, Pettijohn sold the note to the McCook National Bank; that on March 30, 1946, Reese paid the bank the full amount due on the note in the sum of $520.83; that the representations made by Pettijohn were false for the reason that Pettijohn had not secured Albert Meints as a purchaser for the real estate of Reese and that Albert Meints had not agreed to purchase it and had not entered into any contract therefor.

For convenience the plaintiff in error will be referred

to as the defendant and the defendant in error as the state.

The evidence is very conflicting. However, the jury has determined its weight by finding the defendant guilty. By reason thereof the evidence can be said to establish the following: .That Henry P. Reese and Alice Reese, husband and wife, lived on their farm about three miles southwest of Culbertson, Nebraska; that they owned this farm, which is described as the east half of Section 30, Township 3, Range 31, in Hitchcock County; that on July 9, 1945, the defendant came to their home; that as a result of his visit the Reeses then and there entered into a contract with the defendant giving him, for a period of thirty days, the exclusive right to sell their farm on the terms as therein set forth, which terms included the right of a purchaser to immediate possession of the farm, except the buildings and pasture; that the contract provided defendant would receive a commission of $500 upon sale of the farm; that on or about July 17, 1945, the defendant brought Albert Meints, a farmer who lived near Palisade, out to the Reese farm; that Meints had some property in Colorado and was interested in a trade; that Reese told Meints he was not interested in trading; that Reese never saw Meints thereafter with reference to a sale of his farm; that on July 23, 1945, Reese drove from his farm to Culbertson; that on the same day, but after Reese had gone, defendant came to the Reese farm; that Mrs. Reese told defendant that Reese had gone to Culbertson; that she also told defendant that they wanted to back out of the land deal; that defendant then drove to Culbertson and met Reese near the Bree and Foerste hardware store; that defendant then told Reese that he had the farm sold to Meints; that defendant did not have the farm sold to Meints and Meints had not agreed to buy it; that Reese then told defendant he would not sell the farm because the corn crop looked good and he wanted to keep it; that defendant then told Reese that he owed

him $500 commission; that Reese believed the defendant when he told him he had the place sold to Meints and thought he was telling the truth; that relying thereon Reese agreed to pay the $500; that Reese did not have the money but agreed to and did give the defendant his note in the sum of $500 due March 1, 1946, and a chattel mortgage on 160 acres of corn and 20 acres of cane as security therefor; that the exclusive listing contract was then returned to Reese; that on August 30, 1945, the defendant sold the note to the McCook National Bank and received therefor the sum of $503; that on March 30, 1946, Reese paid the McCook National Bank the sum of $520.83 in full satisfaction of the note and mortgage.

Section 28-1207, R. S. 1943, enumerates the different acts that constitute a criminal offense under its provisions and provides in part: "(1) Whoever by false pretense or pretenses shall obtain from any other person, * * * any money, goods, merchandise, credit or effects whatsoever with intent to cheat or defraud such person, * * * of the same; * * * ."

The trial court proceeded under this section of the statute and submitted to the jury the question of the guilt or innocence of the defendant of obtaining money by false pretenses. Will the record sustain such a conviction?

Subsection (4) of the above statute provides: "whoever shall obtain the signature * * * of any person to any promissory note, * * *, or any other instrument in writing fraudulently or by misrepresentation, * * * ."

Is there a fatal variance between the charge in the information, the issues submitted to the jury, and the proof offered at the trial?

That the obtaining of money by false pretenses and the obtaining of a signature to a promissory note or other written instrument by false pretenses are different offenses is evident from the foregoing subdivisions of section 28-1207, R. S. 1943.

"To warrant a conviction in a criminal case, the state is required to establish beyond a reasonable doubt that the accused is guilty of the offense with which he is charged." 22 Am. Jur., False Pretenses, § 103, p. 502. See Davis v. State, 118 Neb. 828, 226 N. W. 449; Davis v. State, 121 Neb. 399, 237 N. W. 297.

Subdivision (4) of the statute makes the obtaining of a signature to a promissory note or chattel mortgage by false pretenses a crime. There is nothing in the statute that makes the subsequent sale thereof a crime nor is it any part of the crime itself; nor does the statute require that any part of the note be paid.

"The rule with reference to allegation and proof in false pretense cases, as to the description of the property obtained, is the same as the rule in larceny; that is, one cannot allege in the indictment or information that one thing was fraudulently obtained, and secure a conviction by proving that something else was obtained. The allegata and the probata must correspond, or at least substantially correspond." 22 Am. Jur., False Pretenses, § 99, p. 500. See 35 C. J. S., False Pretenses, § 49c, p. 700.

As stated in the case of State v. La Vere, 194 Iowa 1373, 191 N. W. 93:

"These things being established, the proof of the crime is complete, and the State is not required to go further and show that the person whose signature was thus fraudulently obtained suffered actual loss or damage thereby. State v. Jamison, 74 Iowa 613. If, for illustration, a person by fraud and false pretense obtains the signature of another to a promissory note which is delivered, and becomes, apparently at least, the legal obligation of the one so imposed upon, and soon thereafter the culprit is arrested, with the instrument still in his possession, the crime is surely none the less complete because he has not yet received any benefit from his wrongful act, or because the party whom he entrapped into signing and delivering the note has suf-

fered no actual loss or injury therefrom. See People v. Genung, 11 Wend. (N. Y.) 18; Commonwealth v. Wilgus, 4 Pick. (Mass.) 177; Tarbox v. State, 38 O. St. 581; State v. Pryor, 30 Ind. 350; In re Rudebeck, 95 Wash. 433 (163 Pac. 930).

"* * * if the crime was committed at all, it was consummated when the signing and delivering of the note were procured. What followed thereafter is important only as evidence bearing upon the allegations of fraud by which that wrong was accomplished."

"* * * in order to establish this crime it is not necessary for the state to establish any loss or damage to the signer. It is, therefore, the act of fraudulent procurement of a signature that is made a crime." State v. Aughinbaugh, Ohio App., 32 N. E. 2d 478.

" 'The offense is complete when the signature is obtained by false pretenses with intent to cheat or defraud another. It is not essential to the offense that actual loss or injury should be sustained.' " Commonwealth v. Lacey, 158 Ky. 584, 165 S. W. 971. See, also, People v. Genung, 11 Wend. (N. Y.) 18, 25 Am. Dec. 594; State v. Hanscom, 28 Or. 427, 43 P. 167; Gillespie v. State, 194 Ind. 154, 142 N. E. 220; Haines v. State, 135 Neb. 433, 281 N. W. 860; West v. State, 63 Neb. 257, 88 N. W. 503.

In Patterson v. State, 25 Ariz. 276, 215 P. 1096, 35 A. L. R. 366, the court held that an allegation that she parted with $50 of her money was not sustained by showing that she was an accommodation endorser. Therein the court went on to say: "The rule with reference to allegation and proof in false pretense cases, as to the description of the property obtained, is the same as the rule in larceny; that is, one cannot allege in the indictment or information that one thing was fraudulently obtained and secure a conviction by proving something else was obtained. The *allegata* and the *probata* must correspond, or at least substantially correspond. It was necessary therefore for the prosecution

to show by their evidence that Mrs. Armer, because of the nonexistence of the drawee in said draft, parted with $50 of her money. What did she part with? She was an accommodation indorser, nothing more or less. She loaned her name and credit to the defendant so that he could go to the Citizens' State Bank, or anywhere else for that matter, and get the money."

As stated in Pollock v. State, 19 Ala. App. 156, 97 So. 237: "So the result is that this record discloses that the defendant was convicted of the offense charged in the first and third counts in the indictment, without any evidence whatever to support the material allegation that he obtained from J. B. Martin the sum of $500 by means of false pretense. If it should be conceded that the defendant did by false pretense obtain the signature of Martin to a written instrument or note, and the note was subsequently paid by Martin, as to which fact there is some evidence that the note was subsequently paid by Martin to the corporation, such proof would not support a conviction for obtaining money by false pretense." See State v. Gibson, 169 N. C. 318, 85 S. E. 7, and the same case in 170 N. C. 697, 86 S. E. 774.

Whether Reese paid any part of the note is not material for as stated in Moline v. State, 72 Neb. 361, 100 N. W. 810: " * * * the value of an instrument in writing, within the meaning of the statute, must be taken to be the amount of the liability expressed therein, * * *." If the note were still in the possession of the defendant and remained unpaid the defendant would be criminally liable if he obtained it in the manner as in the statute set forth. The act is complete when the note or written instrument is obtained. It does not require payment nor does subsection (1) of section 28-1207, R. S. 1943, make it a different or an additional crime when a note so obtained is subsequently paid pursuant to its terms.

The state cites many cases in which checks, drafts, warrants, etc., are either considered as cash or as an assignment of the funds and equivalent to the payment

of cash, or the method used by which the cash is paid. See Brennan v. State, 140 Neb. 277, 299 N. W. 525, on re-hearing 141 Neb. 205, 3 N. W. 2d 217; State v. Detloff, 201 Iowa 159, 205 N. W. 534; People v. Hoffmann, 142 Mich. 531, 105 N. W. 838; State v. Briggs, 74 Kan. 377, 86 P. 447; State v. Brantingham, 66 Mont. 1, 212 P. 499; Schaumloeffel v. State, 102 Md. 470, 62 A. 803; State v. Joseph, 115 Ohio St. 127, 152 N. E. 186. These cases are undoubtedly correct and state the proper rule. But there is a difference in the legal effect of a check, draft, or similar item drawn upon funds and directing the payment thereof and of a note by which the maker agrees to pay when due. None of the cases cited hold that the making and delivery of a note is the same as the payment of cash.

For the reasons stated we do not think the evidence establishes the offense of obtaining money by false pretenses.

For the reasons stated the verdict and sentence of the trial court are reversed.

REVERSED.

CARTER, J., participating on briefs.