Mason v. State.

---

## JAMES T. MASON v. STATE OF NEBRASKA.

FILED DECEMBER 23, 1915. No. 19049.

1. **False Pretenses: EVIDENCE.** Where the prosecution in a criminal case was under section 8874, Rev. St. 1913, and the information alleged that the defendant executed and delivered a chattel mortgage to a certain bank for the purpose of cheating and defrauding the same, and it appears that the defendant had obtained the credit before that time, except the sum of $14, and that the last mortgage given was a renewal, the evidence is not sufficient to establish the commission of a felony, and does not tend to prove an offense greater than a misdemeanor.

2. ————: **AMOUNT INVOLVED: PENALTY.** In such case, where the evidence shows that the defendant only got $14 in cash from the bank at the time of the transaction, and that the mortgage given is a renewal, except as to the said sum of $14, it will be held that the defendant may not be found guilty of a felony, and, at most, can only be guilty of fraudulently obtaining the $14, and so, under the section, if guilty, is only guilty of a misdemeanor, and can only be fined not exceeding $100, or be imprisoned in the jail of the county not exceeding 30 days, all as is provided by said section 8874, Rev. St. 1913.

3. ————. Where the defendant received only $14 in money at the time of the renewal when the chattel mortgage was made, and the bank at Crawford undertook to pay a coupon held by the bank at Fremont, and amounting to the sum of $188, and failed or refused to do so, there can be no indebtedness of the defendant for the $14 that he received because he is entitled to have the bank at Crawford pay the coupon at Fremont, and $14 is not sufficient to pay said coupon, and the payment of that sum to the defendant

would leave the bank at Crawford indebted to him for the difference between $14 and $188, being $174.

4. ———: SUFFICIENCY OF EVIDENCE. Where the evidence shows that the cashier of the bank alleged to have been defrauded told the defendant that he wanted him to pay up, that the paper had run over a long series of years and the directors were not satisfied to renew, and this and other evidence tends to show that the cashier of the bank did not believe that the defendant had the live stock described ·in the mortgage, then it must follow that the cashier was not deceived and did not rely upon the security of the mortgage. In that event, the evidence is insufficient to sustain a verdict of guilty of a felony or a misdemeanor.

ERROR to the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Reversed and dismissed.*

*Earl McDowell, Allen G. Fisher* and *William P. Rooney,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *Charles S. Roe, contra.*

HAMER, J.

The plaintiff in error will be called the defendant. The charge against him is that he is guilty of false pretenses because he obtained a credit with the First National Bank of Crawford, Nebraska, for $4,560 on alleged fraudulent statements touching his ownership of cattle and horses in Sioux county, Nebraska. The defendant was tried in the district court for Dawes county, and the jury rendered a verdict finding him guilty as charged in the information, and found "the value of the money and credit fraudulently secured from the First National Bank to be the sum of $2,111.10." Upon this verdict the defendant was, on the 2d day of March, 1915, sentenced to the penitentiary at hard labor for an indeterminate period of not less than one nor more than five years. The prosecution is under section 8874, Rev. St. 1913. The part of that section applicable to the case reads as follows: "Whoever by false pretense or pretenses shall obtain from any other person, corporation, association, or partnership, any money, goods,

merchandise, credit or effects whatsoever with intent to cheat or defraud such person, corporation, association, or partnership of the same, or shall sell, lease or transfer any void or pretended patent right or certificate of stock in a pretended corporation and take the promissory note or other valuable thing of such purchaser,  *  *  * if the value of the property or promissory note or written instrument or credit, fraudulently obtained or conveyed as aforesaid, shall be thirty-five dollars or upwards, shall be imprisoned in the penitentiary not more than five years nor less than one year; but if the value of the property be less than thirty-five dollars the person so offending shall be fined in any sum not exceeding one hundred dollars or be imprisoned in the jail of the county not exceeding thirty days and be liable to the party injured in the amount of damage sustained."

The First National Bank of Crawford was the successor of a bank having the same cashier and stockholders. When the first bank went out of existence, the defendant continued to make mortgages and borrow money of the new bank, the First National Bank. He got no money by the transactions described in the information in this case, except $14. He may have received money before this last transaction because of representations which he made when the debt was contracted, but no new debt was contracted when the mortgage and notes were given which are described in the information, unless it was the $14. There was already an indebtedness, and therefore, if the transaction was fraudulent, the fraudulent act had already been consummated. Of course, there can be no valid trial and no lawful punishment except for the violation of law charged in the information. The facts fail to show that the defendant requested an extension of the debt, and it is not saying that he requested an extension of the debt to say that he desired to borrow money of the bank to pay what he owed the bank by reason of a former transaction. As he got no money out of the last transaction, there could be no deception at that time, except in

the matter of obtaining the $14 which is hereafter referred to.

The cashier of the bank at Crawford testified that there was a real estate mortgage given by the defendant which was held by the bank at Fremont, the Commercial National, or an associate of that bank. The bank at Fremont was the correspondent of the bank at Crawford. The cashier of the bank at Crawford, Mr. Minick, appears to have indorsed the note or notes secured by the said real estate mortgage, and appears to have sent the same down to the bank at Fremont, and there was an interest coupon on this real estate note and mortgage to be paid at the bank at Fremont, amounting to $188, which the cashier of the bank at Crawford undertook to pay. He, the said cashier of the bank at Crawford, could not rightfully claim that the defendant was indebted to the said bank at Crawford for a transfer of money to pay interest on the said real estate mortgage held by the bank at Fremont when such transfer was not in fact made, and the coupon attached to the real estate note at Fremont was not surrendered to the defendant, but was retained by the bank there against the request of the defendant. If the contention of the defendant concerning the real estate coupon is true, there is no evidence in the case sufficient to convict him of anything. The money to pay the interest coupon was not sent at the time of the transaction, and the defendant insisted that he should have the coupon but Minick did not get him the coupon, and refused at that time to do so. Minick could not keep the coupon in his correspondent's hands at Fremont and yet legally claim that the defendant became indebted to him for the transfer of money to pay interest on the real estate mortgage when such transfer was not made and the coupon was not surrendered. The verdict of the jury finds that the defendant defrauded the bank out of $2,111.10. So long as the defendant did not receive anything, he could not be guilty of taking anything. The $14 in money which the defendant got would not pay the coupon. There can be no

indebtedness of the defendant for the $14 which he received because he is entitled to have the bank at Crawford pay the coupon at Fremont, and $14 is not sufficient to pay said coupon, and the payment of that sum to the defendant would leave the bank at Crawford indebted to him for the difference between $14 and $188, the amount of the coupon, being $174.

There is a failure to furnish evidence which tends to sustain the information, and such evidence as is furnished wholly fails to support the verdict. As the defendant had contracted the debt before the renewal was made, it follows that the misrepresentations which he made, if any, were when the debt was created, and not when it was renewed. Of course, no evidence was offered showing, or tending to show, that any misrepresentation was made when the loan was first obtained, and under the information it would have been prejudicial error to admit such evidence. There was no charge which in any way related to the making of any loan prior to the renewal. In no event could the defendant be tried except upon the charge contained in the information. As the defendant had the credit when the renewal was made, he did not need to get it again, and of necessity could not get it again. If the defendant got any additional credit when the note was renewed and a new mortgage taken, it was only for $14. This would make the offense, if any offense was committed, a misdemeanor, and not a felony.

It further appears that the cashier of the bank, Mr. Minick, claimed to the defendant that he, the defendant, did not have the security. Minick so testified. If that is true, then Minick was not deceived, and could not have relied upon any belief that Mason still had the security. Minick testified that he told Mason, "We had been unable to get him to show us the security." The essentials of the crime of obtaining money or property by false pretenses are that the false pretense or pretenses must relate "to a past event or an existing fact," and "any representa-

tion, or assurance, or promise, in relation to a future transaction, however false and fraudulent it may be, is not within the meaning of the statute," and "the misrepresentations must be of a fact, and not a statement of an opinion, or the making of a promise." *Cook* v. *State,* 71 Neb. 243. Maxwell, Criminal Procedure (2d ed.) p. 129; *Dillingham v. State,* 5 Ohio St. 280; 1 McClain, Criminal Law, sec. 668.

In the case of *State v. Matthews,* 44 Kan. 596, 10 L. R. A. 308, the court held: "The charge of committing the offense of obtaining money or property under false pretenses cannot be maintained in any case unless it appears not only that a false pretense was in fact made, but also that it was made with the intention of cheating or defrauding some person, and that such person was in fact cheated or defrauded to his or her injury." In that case the name of the wrong person cheated and defrauded was put in the information, and the judgment of the district court was reversed for that reason.

The alleged fraud must be proved, and must be relied upon by the plaintiff before damages can be recovered. *Dresher v. Becker,* 88 Neb. 619.

"Fraud cannot be predicated on a promise not performed. To be available there must be a false assertion in regard to some existing matter by which a party is induced to part with his money or property." *Perkins v. Lougee,* 6 Neb. 220.

"In order to obtain redress or relief from the injurious consequences of deceit, it is necessary for the complaining party to prove that his adversary has made a false representation of material facts; that the complaining party was ignorant of its falsity, and believed it to be true; that it was made with intent that it should be acted upon; and that it was acted upon by the complaining party to his damage." *Omaha Electric Light & Power Co. v. Union Fuel Co.,* 88 Neb. 423.

"It is a general rule of law that, in order to obtain redress or relief from the injurious consequences of deceit,

Mason v. State.

it is necessary for the complaining party to prove that his adversary has made a false representation of material facts; that he made it with knowledge of its falsity; that the complaining party was ignorant of its falsity, and believed it to be true; that it was made with intent that it should be acted upon; and that it was acted upon by the complaining party to his damage." 1 Bigelow, Fraud, p. 3.

It will be noticed that the act done must be done "with the intent to cheat or defraud;" because of the necessity of knowledge on the part of the defendant, it must be proved that he knew, or had reason to know, that he did not have the property at the time he undertook to make the mortgage. There is no proof of that given in this case.

Because the evidence does not tend to sustain the information and wholly fails to support the verdict, the judgment of the district court is reversed and the case dismissed.

REVERSED AND DISMISSED.

SEDGWICK, J., concurring.

The information in this case is, I think, wholly insufficient in several particulars to inform the defendant what proof he might expect would be offered against him, or what evidence it would require him to furnish in his defense. An information for obtaining money, goods, merchandise, credits, or effects by false pretense or pretenses must specify and describe the things so obtained in such manner that the defendant may definitely know the charge against him and prepare to produce such evidence as may exist in refutation of the charge. The information charges that the defendant was then indebted to the bank, but in what amount it is not alleged. It also charges that he was desirous of obtaining credit from the bank with which to discharge his indebtedness. The things that he did for which he was prosecuted were done for the purpose of enabling him to procure such credit "and divers sums of money from time to time advanced to him by said bank." It does not appear from the information whether

these divers sums of money were advanced after or before the representations were made. He applied to the bank "for credit and money in said sum." No sum of money had been before that named in the information, so that it is entirely indefinite as to how much credit or what sum of money was applied for. The bank agreed to give the defendant "credit and money in said sum," no sum having been named in the information, so that it is entirely indefinite as to what amount of money or credit, or both, the bank agreed to give him. Then follows the allegation that the bank received a mortgage from him in the sum of $4,560, "and did give to the said James T. Mason moneys and credits in said sum * * * of the value of forty-five hundred and sixty dollars." It is not alleged that this money and credit was the property of the bank, and it is not alleged how much of this was money and how much was credit. The credit that the defendant desired, and the credit which he obtained, is not at all defined in the information. The implication is that the amount of money and credits which he received were represented in the mortgage of $4,560. This mortgage, it is alleged, is given to secure notes. There is no allegation as to the number of the notes nor the amounts of them, respectively, and it does not appear whether they were given on demand, on one day's time, or upon a longer time. It is impossible to tell from the information what the nature of the credits might be. There is no allegation of any specific amount of money that the defendant obtained, nor when he obtained such amount. It may be that these defects in the information were not seasonably challenged, but an information of this nature, that fails wholly to describe or in any way identify the property obtained by the alleged fraudulent pretenses, is so fatally defective that it cannot be presumed that the defendant could have a fair trial upon such information. For this reason, I concur in the reversal of the judgment.

Rose, J., dissenting.

Letton, J., not sitting.