FRANK THOMPSON, V. STATE OF NEBRASKA.

FILED JULY 7, 1924.  No. 23953.

1. **False Pretenses:** GIST OF OFFENSE. "In a prosecution for obtaining money by false pretenses, the gist of the offense consists in obtaining the money of another by false pretenses, with the intent to cheat and defraud." *Ketchell v. State,* 36 Neb. 324.

2. ————: INTENT. The offense of obtaining money by false pretenses is not established unless the intent to cheat and defraud is proved.

3. **Evidence** examined, and *held* to negative the intent to cheat and defraud.

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed and dismissed.*

*George H. Risser,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., and REDICK, District Judge.

GOOD, J.

Plaintiff in error (hereinafter referred to as defendant) was convicted of the offense of obtaining, by false pretenses and with intent to defraud, money in the amount of $714.47. Defendant presents to this court for review the record of his trial and conviction. The information, in substance, charges that on January 10, 1921, defendant, with intent to cheat and defraud one McLean, did knowingly and falsely pretend and represent to McLean that defendant was the owner of 60,000 shares of stock in the Mid-Continent Oil, Gas & Refining Company (hereinafter referred to as the oil company), of the par value of $1 a share, and that said stock had been regularly issued to him and was of the reasonable value of 100 cents on the dollar; that, relying upon and believing the false statements to be true, McLean was induced to extend the time of payment of a note of $10,000, previously executed by defendant and then held

by McLean, and to increase the said loan by advancing to defendant the further sum of $750 and taking a new note from defendant for $11,000, secured by 60,000 pretended shares of stock in the said oil company.

The evidence discloses that some time previous to January 10, 1921, defendant had borrowed from McLean the sum of $10,000 and had pledged as collateral security therefor 60,000 shares of stock in the oil company. When this note became due on January 10, 1921, defendant applied to McLean for a further loan of $1,000. It was finally agreed between them that defendant would execute a new note for $11,000, and would pledge 60,000 shares, previously held by McLean, and 40,000 additional shares of stock in the oil company, together with a $3,000 note signed by one Soukup, and that McLean would deduct from the $1,000 the amount then owing him as interest upon the $10,000 note, and possibly some other items. The transaction was completed by McLean's paying to defendant the sum of $714.47 and taking the new note for $11,000, with the collateral as arranged. There is evidence that defendant at that time represented the oil stock to be worth 100 cents on the dollar, or par value. It is further shown that McLean was at that time the owner of 50,000 shares of stock in the oil company and a director of the company. McLean collected the Soukup note in full, with interest, making in the aggregate more than $3,200, which was applied upon the $11,000 note. As a part of the transaction whereby the loan to defendant was increased, defendant, on the 10th day of January, 1921, executed a written agreement, whereby he agreed to transfer and deliver to McLean, for himself personally, 5,000 shares of the stock of the oil company, and to pledge 100,000 shares of stock in the oil company, and the Soukup note for $3,000, as collateral security to defendant's note for $11,000. The contract further provided that, in event defendant failed to pay his note when due, McLean should become the owner of all the 100,000 shares of oil stock and the Soukup note.

Section 9892, Comp. St. 1922, for a violation of which

Thompson v. State.

defendant was prosecuted, provides in part as follows: "Whoever by false pretense or pretenses shall obtain from any other person * * * any money, * * * with intent to cheat or defraud such person, * * * if the value of the property * * * fraudulently obtained * * * shall be thirty-five dollars, or upwards, shall be imprisoned in the penitentiary."

In the case of *Ketchell v. State,* 36 Neb. 324, it is held: "In a prosecution for obtaining money by false pretenses, the gist of the offense consists in obtaining the money of another by false pretenses, with the intent to cheat and defraud."

In *State v. Matthews,* 44 Kan. 596, it is held: "The charge of committing the offense of obtaining money or property under false pretenses cannot be maintained in any case unless it appears, not only that a false pretense was in fact made, but also that it was made with the intention of cheating or defrauding some person, and that such person was in fact cheated or defrauded to his or her injury."

In *People v. Wakely,* 62 Mich. 297, it is held: "The object of the statute is to punish cheats, and it must be made to appear, not only that some person has been defrauded, but that the person making the representations intended to defraud the person by the representations made." In that case the defendant obtained possession of a buggy and gave his note for $150 in payment, with his brother as surety. He represented that he, himself, owned a farm worth $6,000, free and clear of incumbrance, and that his brother was worth $25,000. It appears that he did own a farm, free and clear, which was worth $6,000, but that his brother was not worth $25,000. In the course of the opinion it is said: "Can it be said that a person worth $6,000, in a farm free and clear of all incumbrance, either intends to or does perpetrate a fraud in giving his note to the amount of $150 for property purchased? Whether it be true or false that his brother whose name was upon the note was worth $25,000 made no difference, unless the vendor of the buggy was actually defrauded in the transac-

tion. * * * In all cases of this kind three things, at least, must concur; the intent to defraud, the false pretense made with the intent, and the fraud accomplished."

Can it be seriously contended, under the facts disclosed, that defendant had any intent to cheat and defraud Mc-Lean? It appears that for the purpose of borrowing the additional sum of $714.47 he put up as security 40,000 shares of stock in the oil company and the Soukup note for $3,000. There is no contention that the Soukup note was not valid and worth its face value, and the evidence discloses that the note was paid in full, with interest. Conceding that the oil stock was not lawfully issued to defendant and was worthless, still the other security put up was more than four times the amount of money obtained, and this security was absolutely good and was paid in full. McLean, as a matter of fact, was not defrauded, and we are at an utter loss to understand how it can be seriously contended, under the facts disclosed, that there could have been any intent to defraud. In addition to this, it appears that the defendant was transferring to McLean 5,000 shares of stock in the oil company, apparently as a bonus for a loan of $714.47. It may be that defendant represented the oil stock to be worth 100 cents on the dollar, although he denies that he made such representation. It may be that Mr. McLean relied upon the representation, but it is at least a tax upon the credulity of any person to believe that one would give, as a bonus, stock that was of the value of $5,000 to secure a loan of $714, and it is an equal tax upon one's credulity to believe that one making the loan would believe the statement that the stock was worth 100 cents on the dollar and that the owner of it would give $5,000 in value of the stock as a bonus for securing such a loan, especially when he was putting up 40,000 additional shares of this stock and a valid note for $3,000 as collateral security.

The evidence is wholly insufficient to establish an intent to cheat and defraud McLean. In fact, it clearly negatives any such intent. Without the intent to cheat and defraud

being proved, the crime charged has not been established. The conclusion reached upon this question renders it unnecessary to consider any of the other assignments of error.

The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.

Note—See False Pretenses, 25 C. J. secs. 11, 90.