## LAWRENCE B. GOLDMAN v. STATE OF NEBRASKA.

FILED APRIL 5, 1935. No. 29133.

ERROR to the district court for Douglas county: JAMES M. FITZGERALD, JUDGE. *Reversed.*

*Harold A. Prince, Lawrence B. Goldman* and *Herman Corenman,* for plaintiff in error.

*William H. Wright, Attorney General,* and *William C. Ramsey, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

PAINE, J.

Lawrence B. Goldman, defendant, was prosecuted in the district court for Douglas county on a charge of obtaining $700 from Lilly Green by false pretenses, in violation of section 28-1207, Comp. St. 1929. The jury returned a verdict of guilty, and he was sentenced to a term of four years in the penitentiary.

The information is not attacked, and the principal errors relied upon for reversal are the refusals to give certain instructions offered by the defendant; and, further, it is insisted that the court erred in sustaining objections to many questions asked by the defendant's counsel, and in admitting answers over the objections of defendant's counsel to a number of questions. The defendant also objects to some 12 remarks made by the court in the presence of the jury during the trial of the case; said remarks of the court, it is claimed, were prejudicial to the rights of the defendant.

The prosecuting witness, Lilly Green, testified that she had lived in Omaha from 1922 until October, 1933, and had worked for several Omaha concerns. She testified that, in the forenoon of May 16, 1932, defendant and her husband drove out to their home, and the defendant said that her husband and she were in Des Moines the day before, and that the defendant had written and had cashed a check on an Omaha bank in Des Moines, and if he did not get the money in the Omaha bank to meet it it would make him a lot of trouble. Defendant said

that "Hank," her husband, had told him that she had money in the Occidental Building & Loan Association, and he wanted to borrow it, and offered to pay interest, and also offered to assign an interest in some of the damage cases which they had, which offer she refused. Defendant then offered to give her a mortgage on his house. She replied that she would not take a mortgage on the house unless it was clear, and the defendant told her it was clear, which the defendant absolutely denies in his evidence. The parties then drove down town, and parked the car on the east side of the courthouse. Defendant got out of the car and Mrs. Green went to the savings department of the First National Bank and drew out $700, and then went to the Occidental Building & Loan Association, where the defendant and her husband were supposed to meet her.

The defendant on the witness-stand testified that he had lived in Omaha twelve years, was a married man and the father of two children, and had known "Hank" Green, who had been in his employ. He gave his version of the affair, as follows: That after he and Hank had cashed the check in Des Moines they talked over getting the money to make the check good, and Hank arranged for defendant to come out to the house and see Mrs. Green, and when he arrived there Hank said to him: " 'I have talked to Lillie and she will be down in a few minutes and she will talk to you.' Finally she came down and I said to her, I says, 'Lillie, I wrote a check in Des Moines to cover some expense we had to meet in Omaha, and we stayed there a day longer, and this check will be in and I haven't got the money to pay it, and Hank told me to go ahead and write it, that he would get the money from you for me to cover the check,' and I said, 'I will be willing to pay you for it, I will be willing to give you $50.' She says, 'That isn't enough, because I lose my interest, and I think I ought to have a little more. I ought to have at least 10 per cent.' She says, 'How long do you want this money for?' I says, 'Fifteen days,

because we have a case we are going to settle and I will be able to pay it. My fees will be more than sufficient to pay this check.' So we talked back and forth and she said, 'What kind of security can you give me?' I says, 'I will give you an assignment of four or five cases, of my fees, if you want it.' She says, 'No, I wouldn't care to have an assignment of fees. Something might go wrong with these cases and I wouldn't get my money.' I says, 'All right then, Lillie, I will give you a mortgage on our house out there. You know how I bought it. You know how much money I put into it since I bought it, about $1,800 or $2,000, and I figure my equity—' (interrupted) Mr. Crawford: Are you quoting your conversation now? A. (continued) Yes, sir. I says, 'You know I have a $5,400 first mortgage against the house, there is a second mortgage for $1,900 that I can buy for $100. Just as soon as I settle this case I am going to buy that second mortgage for $100. The third mortgage is wiped out, so that makes about $5,600 or $5,700 against the house.' "

He also testified that when they were sitting in his home he said: " 'Now Lillie, is this clear to you? You understand what you are doing?' She says, 'Yes; I do.' I says, 'If you are not satisfied with the collateral I am giving you, I would be glad to give you an additional mortgage on our furniture,' which at that time was clear. She says, 'No, I wouldn't think of it. I wouldn't want you to give any mortgage on your furniture.' "

Defendant further testified that they were good friends, and Hank and his wife were out at their house almost every night. Defendant testified that they drove back to the courthouse and Green went into the courthouse to look up the records to see if the mortgages were as the defendant had stated; that they waited about 20 minutes, and she asked her husband about how he found the records, and he said they were all right.

Commencing with question 202, the defendant attempts to lay the foundation for the impeachment of Mrs. Green

in the following manner: "Q. Did you have any conversation with Mr. Bailey,—now don't say what the conversation was, but answer yes or no,—with Mr. Bailey in his office here in Omaha in November, 1932? Mr. Crawford: Well, can't you fix the time a little better? Q. (continued) Do you remember having a conversation with Mr. Bailey? Mr. Crawford: That is objected to as immaterial, and an attempt, if anything, to impeach on an immaterial matter, a matter or conversation that took place some eight or nine months after the money was in the hands of the defendant. The court: I will sustain the objection. Mr. Prince: This conversation is a statement in which she told him that she knew the property,— (interrupted). The court: You can't impeach on cross-examination. Defendant excepts. Mr. Prince: Defendant now offers to prove by this witness, and that the witness would, if permitted to testify, say that in November, 1932, she had a conversation with Mr. Bailey in his office here in Omaha, and at that time and that place stated to the witness Bailey, 'I knew the place was not clear, but Mr. Goldman got it so cheap under foreclosure that I felt I was safe.' Mr. Crawford: Same objection to the offer. The court: I will sustain the objection. Defendant excepts."

The following also appears: "Q. Now did you not further make the statement at that time and place, 'I am going to have him arrested so as to force him to pay both Hank and myself what he owes both of us? Mr. Nye: I object to that as improper cross-examination. The court: Sustained. Defendant excepts. Mr. Prince: Defendant now offers to prove, and the witness would, if permitted to answer, testify 'Yes.' " Objection was sustained.

In the examination of the husband of the prosecuting witness, Henry D. Green, on cross-examination in reference to the check, being defendant's exhibit 3, given to Henry D. Green in Des Moines by the defendant, defendant's counsel asked question 306: "Did you ever see that

check before?" The court sustained an objection. The defendant offered to prove that the witness, if allowed to answer, would state that he had seen the check before, and that it was his signature on the back of the check. In sustaining the objection, the court said: "I don't think your offers to prove on cross-examination are good, Mr. Prince. You don't know whether the witness would answer that way or not, and have no means of knowing."

"So far as the cross-examination of a witness relates either to facts in issue or relevant facts, it may be pursued by counsel as matter of right; but when its object is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the trial judge, and unless abused, its exercise is not the subject of review." *Langley v. Wadsworth,* 99 N. Y. 61.

"In cross-examination, an adverse party is usually allowed great latitude of inquiry, limited only by the sound discretion of the court, with a view to test the memory, the purity of principle, the skill, accuracy, and judgment of the witness; the consistency of his answers with each other, and with his present testimony; his life and habits, his feelings towards the parties respectively, and the like; to enable the jury to judge of the degree of confidence they may safely place in his testimony." *Hathaway v. Crocker,* 7 Metc. (Mass.) 262.

"A witness may always be subjected to a strict cross-examination, as a test of his accuracy, his understanding, his integrity, his biases, and his means of judging." *Perkins v. Adams,* 5 Metc. (Mass.) 44.

"It is no doubt competent for the party to put almost any question, upon cross-examination, which he may consider important to test the accuracy or veracity of the witness." *Stevens v. Beach,* 12 Vt. 585.

There is no question but that the cross-examination was too much restricted by the trial court. It was prejudicial error for the trial court to refuse to allow the defendant

to lay a foundation for the impeachment of Mrs. Green on cross-examination. The trial court repeatedly said that the defendant had no right to impeach on cross-examination. This is not the law. The defendant had a right to lay the foundation for impeachment by cross-examination of the witnesses on the stand. This is particularly true when the matter of intent or reliance is essential to a conviction in a criminal case. Defendant had the right to put these questions to the witness and in case of a negative answer to subsequently call persons as witnesses who could testify to the contrary.

When testimony is given by a witness on direct examination, from which an inference of fact arises favorable to the party producing him, anything within the knowledge of the witness tending to rebut that inference is admissible on cross-examination, and the opposing party is entitled to pursue that line of cross-examination as a matter of right, and a denial of that right is sufficient ground for reversal. *Larson v. Hafer*, 105 Neb. 257; *Vassar v. Chicago, B. & Q. R. Co.*, 121 Neb. 140; *Union Nat. Bank v. Moomaw*, 106 Neb. 388; *Olson v. Peterson*, 33 Neb. 358; *Olive v. State*, 11 Neb. 1; *Blenkiron v. State*, 40 Neb. 11; *Davis v. State*, 51 Neb. 301.

"It is not sufficient that there is a false pretense; the owner of the property must rely on it; the pretense must be an effective cause in inducing the owner to part with his property. Therefore, if the owner has knowledge of the truth or does not believe the pretense, or, although believing it, yet parts with the property on some other inducement, or investigates it and parts with the property, relying entirely on the results of his investigation, the offense has not been committed. But although the owner makes some investigation of the representations made by the accused to ascertain their truth, yet if he nevertheless would not have parted with the goods but for such representations, believing them true, accused is guilty." 25 C. J. 599. See, also, *Mason v. State*, 99 Neb. 221; *McDonald v. State*, 124 Neb. 332.

The trial court refused several instructions offered by the defendant, one of which reads as follows: "You are instructed that if the complaining witness in this case before the payment of the money, made an independent investigation to determine what were the facts and relied upon such independent investigation so made, then your verdict must be for the defendant not guilty, or if upon all of the evidence in this case you have a reasonable doubt upon that proposition, then your verdict must be for the defendant, not guilty."

The court gave no instruction of its own motion in any way touching upon the matters involved in the one set out above.

It is error to refuse a proffered instruction, which is warranted by the evidence and correctly states the law of the case, unless the principles of law involved are covered by other instructions given. *Hyndshaw v. Mills*, 108 Neb. 250; *Strubble v. Village of DeWitt*, 81 Neb. 504; *Severance v. Melick*, 15 Neb. 610.

Defendant sharply objects to many remarks and statements made by the trial court in the presence of the jury during the conduct of the trial; among them, instead of simply ruling on an objection, the trial court adds, "It don't make any difference."

Question No. 161 was: "Now, do you know where your husband went in the car?" Objection was made, and the attorney for the defendant stated to the court: "She has testified what she relied upon, and I am entitled to show every fact and circumstance to show that she didn't rely on it, as a matter of cross-examination. I think if your honor will consider that for a moment, you will see where I am positively right." The court, in the presence of the jury, then made the statement, "No, no, that is absurd."

Defendant complains of another ruling where the court peremptorily ordered, "Answer the question." The harm in this would depend entirely upon the tone of the voice and the manner in which it was said; if this court had

a phonograph record of it, we might realize, as the defendant insists, that it implied to the jury that the trial court was taking too personal a part in the contest waging before him, and "did not display that scrupulous regard for the rights of the defendant which a trial judge should display." However, on the other hand, the trial court, in a desire to hurry the proceedings, may simply have told the witness to answer the question, without first formally ruling on the objection, with no other thought than simply to speed up the trial.

It is, of course, better practice for a trial court to simply rule upon an objection without commenting on the evidence before the jury; however, a remark which does not express an opinion on the weight of the evidence is not prejudicial error. It is the rule in federal courts that a trial judge is authorized, if he thinks it will assist the jury, to express his opinion on a question of fact. However, this is not yet the rule in the courts of this state, where it is considered unwise for the trial court to support his ruling by making significant remarks to the jury. In general, "The judge should, during the course of a trial, refrain from remarks that are calculated in any way to influence the minds of the jury." 26 R. C. L. 1026, sec. 27.

Defendant charges misconduct of prosecuting attorney in his argument to the jury. This is not ordinarily ground for reversal where admonitions were given by the trial court to the jury to consider no statements not supported by the evidence.

After carefully considering the prejudicial errors in this record, we have reached the conclusion that the defendant was not given a fair trial, as required by law, and the sentence is hereby set aside and the judgment reversed, and a new trial ordered.

REVERSED.

EBERLY, J., concurring separately.

I concur in the foregoing opinion, but respectfully call

attention to the fact that the questions involved in the application of sections 20-1201, 20-1203, and 20-1204, Comp. St. 1929, to the facts in this case, or to the cross-examination challenged herein, as disclosed by the record before us, were not raised in the trial court by appropriate objection or otherwise, and are not considered nor decided in the present opinion.