ROGER BRENNAN V. STATE OF NEBRASKA.
299 N. W. 525

FILED JULY 29, 1941.  No. 31148.

*A. J. Kinnersley* and *Martin W. Dimery,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Don Kelley, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

The defendant was charged with a violation of section 28-1207, Comp. St. 1929, which is as follows:

"Whoever by false pretense or pretenses shall obtain from any other person, corporation, association, or partnership, any money, goods, merchandise, credit or effects whatsoever with intent to cheat or defraud such person, corporation, association, or partnership of the same, or shall sell, lease or transfer any void or pretended patent right or certificate of stock in a pretended corporation and take the promissory note or other valuable thing of such purchaser, or shall fraudulently make and transfer any bill, bond, deed of sale, benefit or grant or other conveyance to defraud his creditors of their just demands, or shall obtain the signature or indorsement of any person to any promissory note, bank draft, bill of exchange, or any other instrument in writing, fraudulently or by misrepresentation, if the value of the property or promissory note or written instrument or credit, fraudulently obtained or conveyed as aforesaid, shall be thirty-

five dollars, or upwards, shall be imprisoned in penitentiary not more than five years nor less than one year; but if the value of the property be less than thirty-five dollars, the person so offending shall be fined in any sum not exceeding one hundred dollars or be imprisoned in the jail of the county not exceeding thirty days and be liable to the party injured in the amount of damage sustained."

The information charges that defendant, with a felonious intent to cheat and defraud one L. D. Ott, did pretend and represent to Ott that he, the defendant, was one of the owners of a certain promissory note in the sum of $110.43, given by Ott to one Vern M. Bottom in payment of a life insurance premium, and that he was authorized to collect said note and was entitled to receive part of the proceeds as such part owner, and that if said Ott would pay the face of the note he, the defendant, would cancel and surrender the same to said Ott; that, relying on said false pretenses, Ott drew and delivered two checks to defendant, totaling $110.43, upon a Bridgeport bank; that the defendant presented said checks for payment; that they were paid and the defendant received the payment of said sums; that said pretenses and representations were wholly false in that the note was owned and held by Bottom and was not the property of defendant; that he had no interest in said note; that he did not have said note and could not return and has not returned said note to Ott; all of which defendant well knew, and that defendant made said pretenses and representations with intent to cheat and defraud Ott.

The state's evidence in chief may be summarized as follows: The witness Ott testified as follows: On November 1, 1939, defendant and Bottom sold Ott an insurance policy; and a note, payable to Bottom on March 1, 1940, was given for the first year's premium. Mr. Bottom later called "about the payment of the note;" payment was not made; later the defendant called and Ott "paid him for the note." Ott asked defendant when he would receive the note, and defendant said, "he would send the money to Mr. Bottom and have him send the note down." Payment was made in

two checks; defendant "wanted it" that way; "he said he wanted $50 that day; he would send the other up to Mr. Bottom;" the checks were paid out of his account at the bank; Ott asked defendant for a receipt and one was given "as payment for note dated Nov. 1st, 1939, given to Roger Brennan and V. M. Bottom for insurance;" the note has not been returned to Ott, nor a refund made; Ott did not know that defendant "didn't have any interest in the note." When asked: "Did you believe that he was the owner or part-owner of the note and entitled to collect it?" Ott answered: "Well, I presumed so; yes." On cross-examination Ott testified that the defendant told him that "Bottom had the note," and that "he would secure it * * * and have it returned," and that he "relied upon that." He was then asked: "And that is all you did rely on, is that right?" Ott answered, "Yes."

Bottom testified that after the contract was delivered to Ott, November 19, 1939, he traded another commission to defendant for defendant's share of the commission in the Ott note, and that defendant did not have any interest in the Ott note after that date, nor have possession of the note, nor authority to collect it; and that he did not receive the checks nor the money from Ott; that defendant admitted to him that he had collected and used the money received from Ott; that later the defendant gave Bottom a post-dated check for the amount of the note which check was not paid; that he was holding Ott's note and that defendant had not paid him for the Ott note. On cross-examination he testified that he had an agent's agreement with defendant; that in a sale, such as they made to Ott, defendant was to have half of the commission; that he and defendant "both wrote the insurance," and each was entitled to half the commission on the Ott sale, and that by subsequent transactions he, Bottom, became entitled to all the proceeds of the Ott note. An official of the bank testified that the checks were paid from the Ott account.

The defendant, at the close of the state's case in chief, moved that the jury be dismissed and that he be discharged

for the reason, among others, that the state's evidence, if true, was insufficient to establish the commission of a crime under the statute. The trial court overruled the motion. This is presented as error requiring a reversal.

A review of the state's testimony, favorably construed, is that Ott "presumed" that defendant was at least part-owner of the note and entitled to collect it. This presumption is apparently based on the fact that defendant helped to sell the insurance to Ott and asked for the money. Ott did not testify that defendant told him he was entitled to the money, nor that defendant told him he was entitled to collect it. Ott did not know of defendant's lack of interest in the note, and apparently he made no inquiry about these matters. It is patent that defendant told Ott that Bottom had the note and that that statement was true. Defendant also told Ott "he would secure" the note and "have it returned to" Ott. That he did not do. Ott relied upon that statement and that is "all he did rely on."

This evidence is insufficient to establish the commission of the crime charged. "It is not sufficient that there is a false pretense; the owner of the property must rely on it." *Goldman v. State,* 128 Neb. 684, 260 N. W. 373. The only pretense made by the defendant, relied upon by Ott, was that the defendant would secure the note and have it returned to Ott. That obviously relates to an act which the defendant was to do in the future.

"It is a well-settled rule of the criminal law that the pretense or pretenses relied on to constitute the crime must relate to a past event or an existing fact; that any representation, or assurance, or promise, in relation to a future transaction, however false and fraudulent it may be, is not within the meaning of the statute." *Cook v. State,* 71 Neb. 243, 98 N. W. 810. See *Mason v. State,* 99 Neb. 221, 155 N. W. 895. Reliance, by the owner of property, upon a promise by the accused to do something in the future does not constitute an offense under the act. It is not necessary that the sufficiency of the evidence to prove other elements of the crime be determined.

The trial court erred in overruling defendant's motion at the close of the state's case in chief.

The judgment of the district court is reversed and the case dismissed.

REVERSED AND DISMISSED.

CARTER, J., dissenting.

The information in this case charges that the defendant defrauded one Ott by pretending and representing to him that defendant was one of the owners of a promissory note in the amount of $110.43, given by Ott to one Bottom in payment of a life insurance premium, and represented that defendant was authorized to collect the note and to receive a part of the proceeds thereof as a part-owner, and further represented that if Ott would pay the note the defendant would cancel and surrender the same. The untruth of these statements is alleged. Other elements of the crime were properly charged.

The evidence shows that Ott gave two checks to the defendant in payment of the note which defendant cashed and retained, knowing full well that he had no interest whatever therein. The circumstances clearly indicate that Ott relied upon the representations of ownership and interest made by the defendant. In addition thereto, Ott was asked if he believed at the time he paid the note that defendant was the owner or part-owner of the note and was entitled to collect it. His answer was: "Well, I presumed so; yes." This, together with the circumstances shown by the record, sufficiently show a reliance on the part of Ott on the pretenses and representations made to him to take that issue to the jury.

The decision of the majority is placed wholly on the court's interpretation of one isolated statement made by the witness Ott on cross-examination. The witness Ott testified on cross-examination that defendant said he would get the note from Bottom and return it to Ott. The following colloquy between the witness and the examiner then took place: "Q. And you relied upon that? A. I relied upon that. Q. And that is all you did rely on, is that right? A. Yes."

I submit that the evidence of this witness must be considered in its entirety to the effect that false representations of ownership and interest in the note were made to him and relied upon by him. The fact that additional representations as to a future transaction were made and relied upon cannot have the effect of aborting the prosecution. Certainly, it cannot be the law that, if defense counsel can obtain one favorable response on cross-examination, even though it be the only statement of its kind in the record and refuted by all the other evidence of the witness, it becomes the duty of the court to direct a verdict against the state and thereby substitute its judgment for that of the jury as to the effect of all the evidence of the particular witness.

We must not lose sight of the fact that most witnesses are not learned in the law and that we cannot and should not apply technical refinements to isolated statements in the record. To adopt such a rule would make the administration of justice a game of technicalities that would require preliminary counsel and advice on the part of every witness who took the stand, a situation fraught with much danger to our judicial system. In my judgment, this case is one for the jury upon the evidence and circumstances shown by the record. The majority opinion of this court, in disregarding all the other evidence in the record and seizing upon one isolated statement of one witness as a basis for a reversal and dismissal of the case, is a long step backward in our attempts to eliminate technical refinements, not only as to the law, but as to the effect to be put upon the evidence of lay witnesses. Even the old common-law judges, with all their zeal for technical forms and meticulous refinement, would shudder at the effect of the decision which this court has this day announced. Reason and logic ought still to have their places in the administration of justice.