ROGER BRENNAN v. STATE OF NEBRASKA
3 N. W. (2d) 217

FILED MARCH 27, 1942. No. 31148.

*A. J. Kinnersley* and *Martin W. Dimery,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Don Kelley, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This case was previously reported in 140 Neb. 277, 299 N. W. 525, and is now pending on motion for rehearing.

Defendant (plaintiff in error) was charged in an information with felonious intent to cheat and defraud L. D. Ott, by pretending and representing to Ott that the defendant was the owner of a promissory note in the sum of $110.43, given by Ott to Vern M. Bottom, in payment of a life insurance premium, and further pretending that he was authorized to collect the note and entitled to receive part of the proceeds as such part owner, and that if Ott would pay the face of the note defendant would cancel and surrender the note to Ott. Relying upon these representations, Ott paid the face of the note.

The record discloses that on November 1, 1939, Vern M. Bottom, of Scottsbluff, Nebraska, a life insurance agent, together with Roger Brennan, the defendant, with whom he worked at times in procuring insurance business, sold to L. D. Ott an insurance policy. For payment of the first year's premium on the policy Ott gave a promissory note, made payable to Vern M. Bottom. Bottom called "about the payment of the note," and payment was not made. Later, the defendant called about payment of the note. Ott paid him and asked him when he would receive the note. The defendant said "he would send the money to Mr. Bottom and have him send the note down." Payment was requested in two checks; defendant "wanted it" that way; "He said he wanted $50 that day; he would send the other up to Mr. Bottom." The checks were paid out of Ott's account in the bank. Ott requested of defendant a receipt, and one was given "as payment for note dated Nov. 1st, 1939, given to Roger Brennan and V. M. Bottom for insurance." The note was not returned to Ott, nor a refund made.

In our previous opinion we held:

"A representation, assurance or promise made in relation to a future transaction, however false and fraudulent it may be, does not constitute an element of the offense of obtaining money, goods, chattels or real property by false pretenses.

"Reliance by the owner of property upon a promise by the accused to do something in the future does not constitute a crime under the act."

The foregoing is a correct statement of the law, if we add, provided reliance is *alone* upon a false or fraudulent representation as to a future transaction, or a promise of something to be done in the future.

The question presented is the sufficiency of the evidence to sustain a conviction of the offense. While it is true that Ott said, on cross-examination, that he relied upon the statement made by the defendant that Bottom had the note and he would secure it, and that was all he relied upon, this statement must be considered in the light of all the evidence

and of the immediately preceding questions and answers: Defendant said he "wanted $50 that day; he would send the other up to Mr. Bottom." This evidence, on direct examination, is indicative of the fact that defendant represented that he had an interest in the note to the extent of $50. He went further: He gave a receipt for payment of the note, "given to Roger Brennan and V. M. Bottom for insurance," which indicates that he had an interest in the note.

Analyzing the transaction: The defendant, by the representations made with reference to the note, obtained for himself from Ott $50. Ott received no benefit from it. There is evidence indicating a purpose on the part of defendant, in going to see Ott, to cheat and defraud him out of $50 by pretending to him that he had a right to collect the note, had the amount divided into two checks, gave a receipt for the same, and represented that he would send a part of the money to Bottom, who would send the note to Ott.

Other evidence in the record relates primarily to an accounting, as between Bottom and the defendant, and to a trade made, wherein Bottom was to have all of the commission from the sale of insurance to Ott by paying Brennan' money on another insurance contract. This evidence is purely collateral to the evidence with reference to the offense. The evidence of Ott must be considered in its entirety, to determine the effect and purpose of the representations made by defendant with reference to his interest in the note, and whether or not such representations were made and relied upon by Ott. The fact that representations as to future transactions were made and relied upon also does not dispose of the false and fraudulent representation made as to an existing fact. The following authorities are pertinent to the questions presented:

"In a prosecution for obtaining money by false pretenses the gist of the offense consists in obtaining the money of another by false pretenses, with the intent to cheat and defraud." *Ketchell v. State,* 36 Neb. 324, 54 N. W. 564; reaffirmed in *Thompson v. State,* 112 Neb. 389, 199 N. W. 806.

"To constitute the crime of obtaining money under false

pretenses, the pretense or pretenses relied on must relate to a past event or an existing fact; any representation or assurance in relation to a future transaction, however false and fraudulent it may be, is not within the meaning of the statute." *Cook v. State*, 71 Neb. 243, 98 N. W. 810. See, also, *Mason v. State*, 99 Neb. 221, 155 N. W. 895.

On the question of reliance on the represented fact, it is not necessary that there shall have been reliance solely on the pretended fact which is the basis of the prosecution. A reliance on the pretended fact, coupled with a reliance upon other facts, does not have the effect of defeating the prosecution. *Wax v. State*, 43 Neb. 18, 61 N. W. 117.

On the question of reliance on pretense, Ott was asked: "Did you believe that he was the owner or part-owner of the note and entitled to collect it? A. Well, I presumed so; yes." On cross-examination the witness was asked: "Now, Mr. Brennan when he came out there and had you give him those two checks—he told you he would secure the note—did he tell you who had it? A. He said Mr. Bottom had the note. Q. And he would secure it for you and have it returned to you? A. Yes. Q. And you relied upon that? A. I relied upon that. Q. And that is all you did rely on, is that right? A. Yes."

It will be noted that the basic subject of these questions on cross-examination was possession of the note as distinguished from ownership. It was artfully followed by a return, in two questions, to the general subject of reliance. The answers to these two questions may not be accepted conclusively as an intention, on the part of the witness, to negative the assumption of ownership in the defendant already expressed by the witness. For the purpose of review, where we are not permitted to weigh, but only to determine, the existence of evidence, it is the duty of this court to reject this statement with reference to reliance as an absolute negative. We are further required to hold that the meaning of these responses, along with other responses, in the light of the entire evidence, was a question for determination by the jury.

If we are to adopt the view that "false pretenses," as used in the statute on which this prosecution is grounded, is dependent upon specific representations as to present or past fact and specific statement as to reliance on such represented fact, the proofs in this case should be held to be insufficient. This is neither the language nor the purpose of the statute, and none of our decisions limits the definition to specific representation, although specific representation has been the basis of the charge in most, if not all, of our reported cases. In the light of the statute and of reason, there is as much basis for a holding that one may be just as guilty of false pretenses by acts and the use of equivocal language as by unequivocal statements.

We conclude that what defendant said and did was sufficient evidence of false pretenses, within the meaning of the statute, to justify the submission of that question, defendant's intention, and the question of whether or not Ott relied on the pretenses, to the jury.

The verdict of the jury and judgment thereon are affirmed, and our former decision is herein vacated and set aside.

AFFIRMED.

SIMMONS, C. J., dissenting.

I cannot agree with the majority opinion.

There appears to be no dispute among us on the law. The addition to the rules made in the majority opinion, "provided reliance is *alone* upon a false or fraudulent representation as to a future transaction, or a promise of something to be done in the future," merely gives emphasis to what has already been stated. By the same token it gives emphasis to the undisputed sworn testimony of the complaining witness that "reliance" was "alone" upon a promise by the defendant "of something to be done in the future," to wit, to get the note from Bottom and return it to Ott. Ott's testimony, as to what he relied upon and "all he relied upon" is not an "isolated" statement in evidence. It is *all the evidence* that was produced on that proposition. This sentence alone in the majority opinion proves the error of the final conclusion.

"To constitute the crime * * * (the opinion states) the pretense or pretenses relied on must relate to a past event or an existing fact * * *." The opinion deals much with pretenses. But the question in this case is not what pretenses were made, but *what false pretenses of "past events or existing facts" were relied upon* by the complaining witness? The error of the majority opinion is that it discusses pretenses and representations and overlooks the necessity that there be proof of reliance on those pretenses. The majority opinion states, and it is the fact, that the complaining witness says that *"all that he relied upon"* was the defendant's promise to secure the note and return it to the witness. After reciting Ott's testimony the majority opinion argues that an opposite answer could have been, should have been, and in effect was given and puts a conclusion in the mind of the witness contrary to his sworn testimony and contrary to the only testimony in the record.

The majority opinion holds that there is evidence in the record of statements of existing facts made by the defendant. Assuming that to be so, where is the evidence that the complaining witness relied upon those statements? He does not say that he relied upon them; he says what was the only statement he did rely upon and what he says he relied upon was not a statement either of "a past event or an existing fact." Brennan made two statements of existing facts to Ott as sworn to by Ott. (1) He, Brennan, wanted $50. (2) Bottom had the note. Both of these statements were true. The majority opinion now affirms a conviction, not upon false pretenses that were relied upon, but upon pretenses that could have been relied upon, *but were not* according to the sworn testimony of the state's complaining witness.

The majority opinion next says: "The defendant, by the representations made with reference to the note, obtained for himself from Ott $50." That is the conclusion made by this court. Where is the evidence to support it? It is not quoted. The evidence is that the representation and the only representation made which got him the money was a

representation that he would get the note and return it to Ott. Even the majority opinion does not claim that that proves the essential element of the offense. The question is, what false representations or pretenses as to a "past event or an existing fact" were made by the defendant by which he "obtained for himself" the $50? Assuming that false representations were made, did he obtain the $50 on those representations? The record denies it without dispute. Ott says he obtained the money because he, Ott, relied on the defendant's promise to get the note and return it and that is *all he did rely upon. Ott ought to know.* He paid the money.

The majority opinion further says: "Analyzing the transaction: The defendant, by the representations made with reference to the note, obtained for himself from Ott $50. Ott received no benefit from it. There is evidence indicating a purpose on the part of defendant, in going to see Ott, to cheat and defraud him out of $50 by pretending to him that he had a right to collect the note, had the amount divided into two checks, gave a receipt for the same, and represented that he would send a part of the money to Bottom, who would send the note to Ott."

I call attention to the fact that the *only* representation here claimed by the majority opinion is that the defendant "would send a part of the money to Bottom, who would send the note to Ott." That relates to a future transaction and is "not within the meaning of the statute." Even the majority opinion does not question that conclusion. The whole labor of the opinion is to try to get away from that fact. Yet here, in "analyzing the transaction," it is admitted.

The majority opinion further says: "The evidence of Ott must be considered in its entirety, to determine the effect and purpose of the representations made by defendant with reference to his interest in the note, and whether or not such representations were made and relied upon by Ott." This quotation again raises the question, who knows what Ott "relied upon?" He heard and considered Brennan's statement "in its entirety;" he knows the "effect" it had on him

and he testifies whether or not such representations were relied upon by him, and he says what he "relied upon." By what power does this court say that he was wrong and does not know what he relied upon and that this court does know what Ott *in his mind* relied upon?

The opinion next says: "The fact that representations as to future transactions were made and relied upon *also* does not dispose of the false and fraudulent representation made as to an existing fact." Assuming that "false and fraudulent representations were made as to an existing fact," that does not constitute all the essential elements of the crime; that "does not dispose" of the law that pretenses of "a past event or existing fact" *must be relied upon.* Incidentally, those representations do not have to be "disposed of," but they do have to be relied upon before the offense is committed. Where is the evidence that Ott relied upon them? The opinion quotes no such evidence for the very obvious reason that *there is no such evidence* to quote. There is no "also" evidence in this case as to reliance upon false and fraudulent representations of "an existing fact." There is a specific denial of "also" evidence.

The majority opinion next says: "A reliance on the pretended fact, coupled with a reliance upon *other facts,* does not have the effect of defeating the prosecution." But again the majority opinion comes face to face with the fact that the complaining witness testified that there were no "other facts" that he relied upon. Labor as it will, the majority opinion cannot escape that undisputed, uncontradicted fact of record. The mere assertion of "also" evidence and "other facts" cannot wipe out the sworn testimony of Ott that there was no such reliance.

What is the rule? "It is not sufficient that there is a false pretense; the owner of the property must rely on it; the pretense must be an effective cause in inducing the owner to part with his property. Therefore, if the owner has knowledge of the truth or does not believe the pretense, *or although believing it, yet parts with the property on some other inducement,* or investigates it and parts with the property, re-

lying entirely on the results of his investigation, the offense has not been committed." 25 C. J. 599. "As a general proposition, to establish the crime of obtaining property by false pretenses, it must be shown that the misrepresentation *was relied upon* by the party to whom it was made, and that it deceived him. In other words, the operation of the representation must be established." 22 Am. Jur. 457, sec. 25. 2 Wharton, Criminal Law (11th ed.) sec. 1441, says: "Where, in Massachusetts, one of the representations proved was that the defendant gave a false name, and where the prosecutor testified that this misrepresentation had no influence in inducing him to part with his goods, it was held to have been the duty of the court, either at the time or in the charge, to instruct the jury that such misrepresentation was not, upon the evidence, proved to have been an inducing motive to the obtaining of the goods by the defendant. The same view generally obtains, it being held that there must be causal relation between the pretense and the transfer."

The opinion further quotes a leading question by the state's able prosecutor: "Did you believe that he was the owner or part-owner of the note and entitled to collect it? A. Well, I presumed so; yes." Ott refused to say "Yes" that he "believed" the facts put to him by the state. He "presumed so," and *that presumption is not shown to have been based upon anything which the defendant said or did.* Ott does not say that he relied upon the facts which he "presumed" to be true. Even though he believed what he presumed to be true, yet if he parted "with the property on some other inducement (here the promise to get and return the note) * * * the offense has not been committed." 25 C. J. 599, *supra,* supported by adjudicated cases from a large number of jurisdictions. A conviction for the felony of obtaining money on false pretenses is affirmed because a complaining witness "presumed" something to be true when he says he relied upon an entirely different promise than the "presumed" facts in parting with his money. Ott, by his testimony, eliminated any possible conclusion that he relied upon what he "presumed" to be true. Ott ought to know. He paid the money.

The majority opinion then quotes the testimony of the complaining witness as to what he relied upon and "all he did rely on." This is not "equivocal language" as syllabus point three indicates. The majority opinion then appears to indicate that this court thinks the state's witness did not know what he was talking about, and that this court knows what the answers should have been, and that his answers "may not be accepted conclusively as an intention * * * to negative the assumption of ownership in the defendant." These questions were not asked and the answers were not given to show "an intention, on the part of the witness, to negative (or assert) the assumption of ownership." The questions were asked to determine what the complaining witness relied upon (an essential element in the crime) ; the questions were clear and the answers clearly and unequivocally stated the fact, and the state did not examine further into that matter. How then can the evidence as to *reliance* be rejected because this court has an idea that the witness had some "intention" as to "the assumption of ownership?" If this statement with "reference to reliance" is to be rejected as an "absolute negative," then where is the evidence that shows that Ott relied upon any statement of the defendant? There is none. Let me repeat, Ott ought to know what he relied upon. He paid the money. Does he know what he relied upon, or do we know what he should have relied upon and *nunc pro tunc* make our views his reliance?

I have examined a number of the cases cited in the texts. The nearest one to the present situation dealing with the question of reliance is that of *State v. Eudaly*, 188 S. W. (Mo.) 110. There the defendant was prosecuted for obtaining certain personal property by means of false pretenses. One of the questions presented was upon what statements of the defendant did the prosecutrix rely in parting with her property. Questions and answers of the prosecuting witness are set out in the opinion as follows: "Q. Now, why did you give him this property? A. Well, he said he didn't want to trade unless he could have possession of it by Satur-

day, and he assured me that he would get the title to his property for me. Q. Is that what induced you to do it? A. Yes, sir. Q. Did you rely upon that? A. Yes, sir." The similarity of the questions and answers in the above and instant cases should be noted. It will be noted that there was no specific exclusion of reliance on other statements as there is in the instant case. The Missouri supreme court held that the reliance "was more upon the promises" and said:

"It is too well settled to justify the citation of authorities that the alleged false pretense must be relied upon and be the effective cause in inducing the other party to part with his property. It is equally well established that a mere promise to do something, relating as it does to a future event, is not within the statute; otherwise our jails and prisons must be greatly enlarged. * * *

"While it is not our province to weigh conflicting evidence, it is our duty to consider the whole record in determining whether there is sufficient evidence to sustain a verdict. It is our opinion that the evidence in this case is not sufficient to disclose either a criminal intent on the part of the defendant, or that the prosecutrix relied upon defendant's statement of ownership in parting with her property. Her remedy lies in a civil action where the issues are altogether different, and where questions all decisive here are of little importance." The supreme court of Missouri reversed the judgment and discharged the defendant.

In *People v. Tompkins*, 1 Parker Cr. Rep. 224 (being a decision of the supreme court of New York), it appears that one Nathan agreed to sell Tompkins 100 shares of stock deliverable and payable the following day. On the next day before transferring the stock Nathan sent for a check and received for answer the statement that Tompkins had sent his check to be certified and would send it to Nathan in ten or fifteen minutes. Relying upon this promise Nathan transferred the stock to Tompkins. The offense charged was that Tompkins by means of false pretenses cheated and defrauded Nathan out of the stock. That court said:

"Upon this state of things, it is perfectly apparent that

Nathan's reliance was upon the promise, that a check would be sent in ten or fifteen minutes, and not solely on the fact that Tompkins had sent his check to be certified. And nothing can be better settled than the rule, that such a promise is not a false pretense under the statute.

"To constitute the crime under the statute, two things are essential: A false representation as to an existing fact, and a reliance upon that representation as true. Both these ingredients are wanting in this case; for the reliance evidently was mainly on the promise to send the check. This in no respect constitutes the crime."

The majority opinion further says: "In the light of the statute and of reason, there is as much basis for a holding that one may be just as guilty of false pretenses by acts and the use of equivocal language as by unequivocal statements." I shall not now quarrel with that statement, provided it is limited to the previous holdings that those acts and facts "must relate to a past event or an existing fact" *and be relied upon*. But again, where is the evidence that they were relied upon?

The net of the majority opinion is that the jury had the right to find that Ott, the state's complaining witness, relied upon pretenses which he, Ott, in unequivocal and undisputed evidence swears that he did not rely upon. This court has no right to brand Ott as an inartful perjurer in order that it may brand Brennan as a felon. This opinion affirms the conviction by rejecting the evidence of the state's only witness on an essential element of the crime and substitutes in lieu thereof this court's construction of the evidence which it thinks would have sustained a conviction had Ott relied upon it, when he swears he *did not*. This court has no right to put conclusions in the mind of a witness that the witness denies were there. Ott, and Ott alone, knows what he relied upon. It is what Ott relied upon, not what the jury or this court think he *might* have relied upon, that determines the question of guilt or innocence.

A conviction of the crime charged cannot be sustained on this record.